## SPENCER *vs.* SPENCER and CORNING.

It is proper, in taking and stating the accounts of two trustees, that the master should state the accounts as to the trust fund separately, as between the trustees respectively and the cestui que trust ; although each trustee is liable for the defaults of the other in misapplying the trust fund  And the consent of the parties that the accounts should be thus stated is equivalent to a special provision, in the order of reference, authorizing the accounts to be so stated.

Where stock is transferred, by the holder, and there is no evidence that such holder did not receive payment for the stock from the transferee, it seems the legal presumption is that he did receive such payment.

Where stock belonging to a trust fund is transferred under a joint power of attorney given by two trustees of the fund, they are both liable for the whole proceeds of the stock ; although such proceeds pass wholly into the hands of one of the trustees. The joining in the sale of stock, by a trustee, and his suffering the money received for the stock to go into the hands of his co-trustee, renders him liable to the trust fund for such money, in case of a misapplication thereof by the co-trustee.

Where the litigation, in a suit against a trustee, arises from his gross negligence in not keeping proper accounts of the trust estate, and from his misapplication of the trust funds, he will be charged with the costs of the suit.

And where one of the trustees neglects to insist that the accounts of the trust estate shall be annually passed, as specially directed by the trust deed, and omits to take steps for the removal of his co-trustee who neglects to have the accounts passed, he is not entitled to his costs, in a suit against him and his co-trustee for an account.

Where a cestui que trust files a bill against his trustee for an account, and in such bill makes an unfounded claim against the trustee, and where the trustee, in his answer. to such bill, makes an unfounded claim upon the trust fund in his hands, neither party will be entitled to costs as against the other.

THIS case came before the chancellor upon an appeal from a decree of the late assistant vice chancellor, made upon the hearing of exceptions to a master's report and for further directions.  The defendants W. Spencer and R. S. Corning were trustees of the property of J. Spencer, the complainant, the brother of one and brother in law of the other of the defendants.  The defendant Corning put in his answer to the bill; to which answer a replication was filed.  And the defendant W. Spencer suffered the bill to be taken as confessed.  In January, 1839, upon the written stipulations of all the parties, a decretal order was entered, referring it to Master J. Rhoades to take and state an account between the parties complainant and defendants, touching and concerning

the matters in the complainant's bill and the answer of the defendant Corning. But such decretal order provided that nothing therein contained should be construed to admit or establish or waive the liability of the respective defendants for the acts or omissions of each other. Under this order of reference the master took the accounts between the parties; and he found a balance due to the complainant of $4940,34. By the request of the defendant Corning, and with the assent of the other parties, the master also made separate statements of the receipts and disbursements of the defendants W. Spencer and R. S. Corning respectively. And he reported that W. Spencer was a debtor on account of the trust estate, to the amount of $5658,41; and that the disbursements and payments of the defendant Corning, on account of the trust estate, exceeded his receipts $887,53.

To this report the complainant filed five exceptions, all of which were disallowed, except so much of the second exception as related to the sum of $208,07 included in voucher No. 45; as to that sum the exception was allowed.

W. Spencer took nine exceptions to the report in reference to the statement of his individual receipts and disbursements on account of the trust estate; all of which exceptions were disallowed except the fifth, which the assistant vice chancellor allowed. And he charged the $976,89, under the date of November 3d, 1834, to the account of the defendant Corning.

The defendant R. S. Corning took three exceptions to the report; the two first of which were disallowed. But the assistant vice chancellor allowed Corning's third exception, except so far as it involved the charge of interest upon a note of $203,58, from the 28th of July, 1834. And having proceeded to state the result of the account according to his decision upon the exceptions, he made the balance due to the trust estate, from W. Spencer, $3749,14, with interest from the date of the master's report, and the balance due from the defendant Corning to the trust estate the sum of $1258,72; these sums he required the respective defendants to pay into court within thirty days, for the use of the complainant. And he directed the defendants to transfer the securities in their hands to the clerk of the court, for the complainant's

Spencer *v.* Spencer.

use, until a new trustee could be appointed. But the assistant vice chancellor having been furnished with copies of the original schedules, which were annexed to the draft of the master's report, instead of the corrected schedules annexed to the report as it was settled and filed, a mistake occurred in computing the balances due from the defendants respectively; under the decision of the court as it was intended to be made. By such decree neither party was to recover costs as against the other.

The defendant Corning appealed from the whole of the decree. But he subsequently gave notice to the respondents that he waived his appeal except as to the following points: *First;* as to that part of the decree which allowed so much of the complainant's second exception as related to the sum of $208,07 included in voucher No. 45. *Second;* as to so much of the decree as allowed the fifth exception of the defendant W. Spencer. *Third;* as to that part of the decree which disallowed so much of the third exception of the defendant Corning which involved a charge of interest upon the note of $203,58, given for interest. *Fourth;* as to that part of the decree which, in carrying out the allowance of the third exception of the defendant Corning, charged him with $2861,42, the balance of Horton's bond, as an offset to the debt of Corning against the complainant, which was liquidated on the 27th of July, 1833, at $2908,32; to which the third exception of Corning referred; and also as to that part of the decree which fixed the balances declared to be due from the defendants respectively, and decreed payment thereof. *Fifth;* as to that part of the decree which refused costs to either party as against the other. And the complainant appealed from that part of the decree which related to costs.

*S. Stevens,* for the complainant.

*L. H. Palmer,* for the defendant W. Spencer.

*L. H. Sandford,* for the defendant Corning.

THE CHANCELLOR. The first question which I shall consider, and which is the most important one in the case, is as to the defendant Corning's third exception; or rather to that part of the decision which holds Corning accountable for the balance upon Horton's bond and mortgage. The evidence in the case leads my mind irresistibly to the conclusion that the defendant Corning never paid any consideration for the deed of the 20th of April, 1833, and for the assignment of the mortgage of Horton, except the several sums included in exhibit B. B. The sole object of the deed appears to have been to prevent the property from being squandered, and to transfer it as a security for a portion of the debts mentioned in exhibit B. B. It will be seen, by reference to the evidence, and the endorsements upon many of the vouchers, that a considerable portion of these debts had been paid or assumed, by the defendant Corning, before the date of that deed. Corning's letter of the 13th of April, 1833, is important evidence on this subject. The second execution and acknowledgment of the assignment of the mortgage, in which the consideration is altered to $3000, took place on the 7th of June; four days after the date of the deed of trust to the defendants. And Corning's letter to W. Spencer, immediately after the assignment was thus amended, shows how the $3000 was made up. It follows of course, upon this view of the case, that the interest of the note given for a year's interest on exhibit B. B. was properly disallowed by the assistant vice chancellor. And so much of the decree as declares that the defendant Corning is to be charged with the $2861,42, as the balance of Horton's bond and mortgage, and allows that sum as an offset against the debt acknowledged in exhibit B. B., is not erroneous. The assistant vice chancellor was also right in supposing that these claims should be adjusted in this suit. For if there was in fact any debt due to Corning from Spencer, at the date of the trust deed, which had not been paid by the proceeds of this mortgage, it was proper that it should be retained by Corning out of the trust property.

The form of the complainant's second exception is that the master has allowed vouchers Nos. 31, 34 and 43. And the decree is that the exception shall be disallowed, except so much

thereof as relates to the $208,07 included in voucher No. 45. This part of the decree is right in form, if the assistant vice chancellor came to the correct conclusion that the sum referred to, and allowed upon exhibit 45, was also embraced in the general receipt, voucher No. 43, which was given sixteen days afterwards for $330,28; for the cash received up to that date.    For the $208,07 being allowed to Corning, as of the 30th of April, upon the first receipt, the whole of voucher No. 43, referred to in the complainant's second exception, should not also be allowed.    The assistant vice chancellor is also right in reference to the substance of this item.    On the face of the receipt of the 16th of May, it is stated that the complainant has received in cash, *up to this date,* $330,28; and that receipt is embraced in the annual account rendered in June thereafter, showing the sum of $699,77 received on account of the $700 annuity.    But that account does not contain the other charge of $208,07 in voucher 45; although the last mentioned voucher states in express terms that the $208,07 was on account of the annuity for the current year ending on the first of June then next.    This is conclusive, to any mind, that this sum was embraced in the subsequent receipt given on the 16th of May, and was brought into the account of the annuity for the current year.· It is true the defendant Corning, in his further answer, swears he believes these charges to be correct. That, however, is not sufficient to countervail the intrinsic evidence arising from the face of the several vouchers.    The probability is, that Corning forgot that he had taken a receipt for the $208; that when he paid a further sum, a few days afterwards, he drew the receipt in such a form as to include the whole; and that when he put in his answer, some years afterwards, he found this receipt and supposed it was not embraced in the receipt subsequently given.

    I shall next proceed to consider whether the master or the assistant vice chancellor came to the correct conclusion upon the subject of the 5th exception of the defendant, W. Spencer. It was not only proper, but necessary to the attainment of justice, that the master should state the account as between the complainant and each of the defendants, in relation to the trust

fund; even if the defendants were eventually to be charged for the defaults of each other in misapplying the fund. And the master, by his report, shows that the accounts were thus stated at the request of Corning, and with the consent of the other parties. And this consent of the parties is equivalent to a special provision in the order of reference, authorizing the master to state the accounts in that manner.

The fifth exception of W. Spencer is, that the master has charged him individually with $976,89, as of the 3d of Nov. 1834, the proceeds of the sale of New-York state stock; whereas he ought to have charged the same to the defendant Corning, and not to the exceptant. The facts in relation to this sum are as follows: Corning, W. Spencer, D. Spencer, and Corning & Spencer as the trustees of John Spencer, had equal shares of the New-York five per cent canal stock, redeemable in 1845; amounting to $872,23 for each. On the 30th of October, 1834, R. White, as the attorney of W. Spencer, transferred the stock of the latter to R. S. Corning; and on the next day Corning sold to Coster & Carpenter, brokers in New-York, $1744,48 of the same kind of stock, at 112 per cent, and received therefor a check for $1953,82. This must have been Corning's original stock and the stock which William Spencer had transferred to him the day previous, by his attorney. And as there is no evidence that W. Spencer did not receive pay for the stock thus transferred to Corning, at or before the time of such transfer, the legal presumption is that he was paid. If he was not, however, that stock had nothing to do with the trust funds in the hands of the defendants as the trustees of John Spencer. Of course, therefore, it cannot come into these accounts. And W. Spencer must proceed in some other way to obtain payment, from Corning, for the $976,91 received upon the sale of W. Spencer's half of the stock sold to Coster & Carpenter, on the 31st of October; if he has not been already paid.

The only remaining question for consideration, upon this exception, is whether Corning or Spencer is primarily liable to the complainant for the proceeds of the stock held by them as trustees; and which it appears, from the testimony, was transferred

to Coster & Carpenter under the joint power, on the 3d of November, 1834, for the $876,89, which is in controversy by this exception.   The testimony of White shows that the stock which belonged to the trust fund was transferred by virtue of a power of-attorney to him, to make the transfer, executed by both the trustees.   That power was dated on the 1st of November, and was acknowledged before Judge Hilton of the Albany common pleas, and witnessed by him.   Corning, therefore, must have returned from New-York, after the sale of the other stock which he transferred to Coster & Carpenter the day previous.   Whether either he or W. Spencer went to New-York after that, does not appear; but I should infer from the testimony that neither of them went there to make the sale.   For it appears that Daniel Spencer also gave a power to White to transfer his stock on the book of the Manhattan Company, where all the stock was transferable.   And on the 3d of November, 1834, White transferred both parcels to Coster & Carpenter, who took but one certificate, from the Manhattan Company, for the two parcels transferred to them on that day.   None of the witnesses have any recollection of the transaction except from their books.   But from such books it appears that A. Kimball made the sale of these two parcels of stock to Coster & Carpenter and received therefor their check, payable to him or his order, for the sum of $1953,79; or $976,89 for each moiety of the stock.   I infer from all this, that after the return of Corning to Albany, on the morning of the 1st of November, it was deemed advisable by the trustees to sell the stock held by them, at the price it was then bringing in the market; that the power was thereupon executed by them and sent to A. Kimball, as their agent, to make the sale and transmit them the proceeds; and that Daniel Spencer at the same time, either through Corning or otherwise, employed Kimball to sell his stock, and transmitted a similar power to White, the cashier of the Manhattan Company, to enable him to make the transfer upon the books of the company.   There is no evidence as to who received the money for the trust stock, from the hands of Kimball; except what may be inferred from the receipt of W. Spencer, of the 10th of November, 1834.   And if that receipt does not relate to the stock

in question, one half of the $976,89 should be charged to each of the defendants, as between themselves. As to the complainant, however, they are both ultimately liable for the whole; for the stock was transferred under a joint power from both.

But unless this receipt has been altered by the defendant Corning, and is a forgery, the fifth exception of the defendant W. Spencer ought not to have been allowed; even as to the one-half of the proceeds of that stock, and the interest thereon. The receipt is in the hand-writing of the defendant W. Spencer, and the amount specified therein is the precise sum for which the trust stock was sold, a few days previous. It is also two cents less than the amount for which W. Spencer's own stock was sold, on the 31st of October, before Corning's return to Albany. The language of the receipt is singular, but I think it can be rationally explained. The receipt is in these words:

"Received of Richard S. Corning nine hundred and seventy-six $\frac{89}{100}$ dollars, *in full* for the amount received by him on the sale of New-York state five per cent stock *owned* by me, &c. Nov. 10th, 1834.

WM. SPENCER, Trustee, &c."

It will be seen that the defendant Wm. Spencer, is credited with $1648,42; which, Mr. Stevens says, he actually paid on the first of July, for John Spencer's share of the Canal Bank assessment. But exhibit No. 7, produced by W. Spencer, shows that a part of the funds for that purpose must probably have been raised by him upon the discount of a note, signed by him and his co-trustee, R. S. Corning, for $1000, dated on that day, payable to the order of D. Spencer, at the New-York State Bank, sixty-three days after date, and endorsed by D. Spencer. The note was discounted by some bank, as would appear from the calculation of the discount thereon. This note became due on the 2d and 5th of September; and if renewed once it would fall due in the fore part of November when this stock was sold. This corresponds with the filing upon the back of the receipt of the 10th of November, which is in these words: "Wm. Spencer's receipt for New-York state stock sold, Nov. 10, 1834, for J. Spen-

cer's part of Canal Bank money." The probability, therefore, is, that the funds of the several parties to pay off their shares of the assessments were, to a certain extent, raised by discounts; that their notes were renewed until their several shares of this stock were sold, about the 1st of November, 1834, to pay them off; and that W. Spencer received the proceeds of the trust stock, and applied it to the payment of the money loaned, upon the joint note of himself and Corning, on the 1st of July. Even if this were not so, and I admit it is but a conjecture, it appears that the defendant W. Spencer was the keeper of the funds of the trust estate; and that whenever expenses had been incurred or payments made by Corning, they were refunded to him by Spencer out of the trust funds. It was, therefore, strictly in conformity with the mode of doing business between them, that W. Spencer should receive the proceeds of the stock, belonging to the trust estate, when the sale was completed and the money was received. And if Corning had in fact received a transfer of W. Spencer's stock, to be sold for him, and had not taken a voucher showing that the proceeds of that sale had been accounted for, this receipt was probably intended by Spencer, who drew and signed it, to answer the double purpose, of showing that he had received the $976,89, the proceeds of the stock of the trust estate, which was to be accounted for by him as trustee, and also of acknowledging that he had been paid in full for his own stock, which had also been sold by Corning. If the *&c.* before the word November, in the receipt, and the words *trustee, &c.*, after the name of W. Spencer, have not been fraudulently and feloniously interpolated by the defendant Corning, it is impossible to resist the conclusion that W. Spencer received the proceeds of the sale of the trust stock; and that he intended to acknowledge the receipt of it, by the instrument in question. And the testimony establishes the fact, that the word trustee is in the hand-writing of Spencer; thus removing all grounds for suspicion that the defendant Corning has been guilty of a forgery. I conclude, therefore, that the master was right in charging this sum to the individual account of W. Spencer, and not to the account of Corning. Of course, the decree of the as-

sistant vice chancellor was erroneous in allowing the fifth exception of the defendant W. Spencer. The $976,89, with interest thereon, must therefore be taken from the separate account of the defendant Corning, and must be decreed to be paid by W. Spencer to the complainant, in addition to the amount which he was directed to pay by the decree appealed from. But the defendant Corning has unquestionably rendered himself liable to the complainant for this sum of money, by joining in the sale of this stock, and suffering the money to go into the hands of his co-trustee; who, as it now appears, had misapplied a large sum of the trust funds, received upon E. Corning's bond in January, 1834. Corning must therefore be decreed to pay the amount of the proceeds of the stock, or so much thereof as may be necessary to pay the amount due to the complainant from the two defendants, if it cannot be collected from W. Spencer.

As a mistake in the schedules has led the vice chancellor into another error in stating the balance due from Corning, that error must also be corrected in the decree. And if the parties cannot agree as to the corrections and computations, so as to insert the proper amounts in the decree without a further reference, there must be such a reference to adjust the amount, in conformity with this decision. It may also turn out, upon a proper statement of the accounts in conformity with the decision upon the exceptions, &c., that the $976,89 still due from Spencer, will more than pay what is due to the complainant, and leave a small balance of that amount due from the defendant W. Spencer, to Corning. The decree must, in that case, direct the payment to the complainant of the balance due to him from W. Spencer, and that W. Spencer pay the residue of what is due to the trust estate, to Corning, to make up the amount which Corning has overpaid.

Upon the question of costs, I think the defendant W. Spencer should have been directed to pay to the complainant so much of the costs of the suit as had not been produced by the litigation of the items of the account as between the complainant and the defendant Corning. That exception, of course, includes the expense of all the testimony in relation to the character of Cor-

ning and the costs upon the exceptions, both of the complainant and of Corning. The whole, or nearly the whole, of the necessary part of the litigation in this suit, appears to have arisen from the gross negligence of W. Spencer in not keeping proper accounts of the trust estate ; and from his having misapplied the funds to the extent of several thousands of dollars.

The defendant Corning is also in fault for not having insisted that the accounts should be annually passed, before the master, as directed in the trust deed. For when his co-trustee neglected to have such accounts passed, Corning should have taken the proper steps to have him removed as one of the trustees. The fact that W. Spencer was his brother in law, and also a brother of the complainant, is some excuse; but it is not sufficient to entitle Corning to his costs out of the trust fund. Besides, Corning, in his answer, made an unfounded claim upon the trust fund which was in substance disallowed. On the other hand, the complainant has also made unfounded claims upon him, which have been disallowed. As between the complainant and Corning, therefore, the decree of the assistant vice chancellor, as to costs, is right, and it should not be disturbed upon the appeal of either party.

Neither party is to have costs upon the appeals, as against the other. Nor are costs to be allowed as between either of the appellants and the respondent W. Spencer, on either of the appeals. But as the suit was for the benefit of the trust fund, all the necessary costs of the complainant, as well upon the appeals as in the proceedings before the assistant vice chancellor, or in the cause, which shall not be collected from the defendant W. Spencer under this decree, must be paid to the complainant's solicitors out of the trust fund in the hands of the new trustee.