## BLOSS & ADAMS *vs.* BLOOMER.

It being the policy of the law to protect the rights of individuals in respect to their own inventions, labels and devices, and the legislature having passed an act to punish and prevent fraud in the use of false stamps and labels, it seems to be implied that individuals shall not themselves attempt, or allow, any imposition upon the public by the false and fraudulent use of such labels devices, &c.

Accordingly *held*, that it was an offense against the spirit of the law, equally injurious to trade and commerce, and equally an imposition upon the public, to palm off spurious goods under cover of genuine labels and devices. And that contracts to do this were clearly against public policy, and should not be upheld and enforced by the courts.

A contract for the sale and purchase of a quantity of empty papers or bags for seeds, with the plaintiffs' labels thereon, to be filled with seeds by the pur-

Bloss *v.* Bloomer.

chaser, and the seeds thus put up to be offered for sale by the purchaser of such papers, in a specified county, and not elsewhere, was therefore held to be void.

APPEAL from an order made at a special term, overruling a demurrer to the second cause of action set forth in the complaint. The first cause of action need not be stated. In the second count of the complaint, and for a second cause of action, the plaintiffs alleged that on the 12th day of December, 1854, at Rochester, the plaintiffs and the defendant entered into an agreement whereby the plaintiffs agreed to sell, and did sell to the defendant, twenty thousand, or thereabouts, empty papers or bags for seeds, with the plaintiffs' labels thereon, and two thousand papers or bags of seeds with the plaintiffs' labels thereon, for the sum of $52.27; that the defendant agreed on his part to pay the said sum for the seeds and bags; to fill said empty bags with seeds of good quality; and sell or dispose of them so filled, and the bags of seeds purchased of the plaintiffs, with their labels upon the same, in the county of Dutchess, in the state of New York, and nowhere else. That the said quantity of bags of seeds and empty seeds bags, with the plaintiffs' labels thereon, were then and there delivered to the defendant except a small quantity of empty seed bags which were delivered a few days thereafter; and that the plaintiffs fulfilled, in every particular, their part of the said agreement, but that the defendant, neglecting his duty in that behalf and wrongfully intending to injure the plaintiffs in their said business and in their reputation as seedsmen, did not fill said empty seed bags with seeds of good quality, and did not sell or dispose of said bags of seeds and empty seed bags to be filled with his own seed, which were sold to him by the said plaintiffs, as aforesaid, in the said county of Dutchess, as he by the said agreement had agreed to do, but filled said empty seed bags with seeds of a poor quality, and sold or disposed of them, together with the bags of seeds sold to him by the plaintiffs, as aforesaid, at divers other places, and in divers other counties than the said county of Dutchess; by reason of which premises the plaintiffs had suffered damages to the amount of $200.

The defendant demurred to the second cause of action, and specified the following grounds of objection thereto, to wit: 1st. That it did not state facts sufficient to constitute a cause of action. 2d. That the alleged agreement set forth in the complaint in respect to the filling of seed bags by the defendant, with his own seeds, and selling them as seeds raised and put up by the plaintiffs, was an agreement to defraud and deceive the public, and no cause of action could arise from its breach by the defendant. 3d. That the condition annexed to said alleged agreement to sell all the said seeds when put up in bags as therein set forth, nowhere else except in the county of Dutchess, was repugnant to, and inconsistent with, the right of ownership in the defendant, as purchaser of the articles sold by the plaintiffs to the defendant, and was therefore void. 4th. That the entire agreement therein set forth was void, as being against public policy and in restraint of trade.

The special term overruled the demurrer, and the defendant appealed.

*F. E. Cornwell*, for the appellant. The second count of the complaint contains no cause of action, because, I. The contract is on its face a cheat and imposition upon buyers. It cannot be performed without practicing deceit upon the public. The plaintiffs could not permit an indiscriminate use of their labels in this way by third persons, without being parties to the fraud. They virtually say to the public by their labels—"these are our seeds, raised and put up by us—you may depend upon it you are buying a genuine article—you have our experience and care as seedsmen to rely on." This is a falsehood and a deceit— a false representation in a material point. And for granting the right to make such false representations, they cannot upon any correct principle, be entitled to be paid. The defendant could not be compelled to fulfill such a contract. It would be compelling him to cheat the community because he had *agreed* to do so. Suppose, for illustration, an agreement between two persons to palm off upon the community flour of some other description as "Genesee Flour," by putting a false brand upon

Bloss *v.* Bloomer.

the barrel, could either party collect *damages* of the other for failing to carry out the agreement? This is not an action for the *value* of the article sold. It has been paid for. It is simply an action for damages. Suppose again, an agreement by which A. sells to B., for the purposes of re-sale, a horse at a certain price; and as part of the contract, B. agrees with A. to re-sell the horse as of a particular breed, and to represent him to be such; both knowing the representation to be false. B. violates the agreement; can any action be maintained by A. for any damages he may sustain by such breach? Clearly not. For the agreement itself is against good morals. " A claim which is founded upon a transaction which is either *malum prohibitum* or *malum in se*, cannot be enforced by an action of any kind." (*Eberman* v. *Reitzel*, 1 *Watts & Serg.* 181, cited in 1 *U. S. Dig. Supplement*, 67.) See also, *Fuller* v. *Dame*, (18 *Pick.* 472,) where it was held that an agreement on which that action was brought, was invalid, as " contrary to public policy and to open, upright and fair dealing." " A contract to do an illegal or immoral act is invalid, and will not be enforced in courts of justice." (*Forsythe* v. *State*, 6 *Ham.* 21.) " Fraud avoids a contract *ab initio*, both at law and in equity, whether the object be *to deceive the public or third persons*, or one party endeavor thereby to cheat the other. For the law will not sanction dishonest views and practices, by enabling an individual to acquire, *through the medium of his deception*, any right or interest." (*Chitty on Contracts*, 678, *and cases there cited.*) One of the cases cited in Chitty is that of a contract for the sale of a picture as one painted by a particular master, which in fact was not painted by him. If it be objected under this head that the contents of the labels are not set forth in the counts, so as to *show* what the plaintiffs profess by it to do or to furnish, we say in reply that that circumstance is in support of the demurrer. For unless it be assumed that the labels advertised that the seeds were raised and put up by the plaintiffs, then the count fails to show that the plaintiffs have any interest which can be injured, and consequently no fact is averred from which the damage can be seen to arise.

And it is thus a further objection to the count that the contents of the labels are not spread out in the complaint.

II. The restraint upon the sale as to territory, is void. The purchase of the articles sold by the plaintiffs and payment of the price, transferred the ownership to the defendant. And the unlimited right of *sale* of the articles purchased, is the very essence of ownership. Nothing short of a copyright could give the plaintiffs control over territory. And even then such control is gone when they have *parted with their title.* The free right of *sale* is one of the essential attributes of *title.* (1 *Black. Com.* 138. 2 *Kent's Com.* 110. *Bouv. Law Dic. tit. Property.* 12 *How. Pr. Rep.* 255.) If real estate be devised *in fee,* a subsequent clause in the will providing that the devisee shall *not* sell is void, as repugnant to the right of ownership. Here the articles were *sold* at a given price, which was paid. The plaintiffs could no longer exercise any control over the article. It was as full a transfer, as in any other case of sale at their counter. The defendant might destroy his purchase, or plant or use or sell it where he pleased, without being liable to account for his acts to the plaintiffs.

*J. Van Voorhis, jun.* for the respondents. I. The second count in the complaint contains a complete cause of action. It sets forth a contract between the parties and a breach of the same on the part of the defendant, in consequence of which the plaintiffs have sustained damages.

II. The agreement is not an agreement to defraud or deceive the public. If the defendant had fulfilled the agreement on his part, by putting into the bags purchased of the plaintiffs seeds of a good quality, no one could be injured in any manner.

III. The condition in the agreement, that the defendant shall sell the seeds in Dutchess county, and nowhere else, is not inconsistent with the right of ownership of the defendant.

IV. The agreement is not in restraint of trade. The law relating to contracts in restraint of trade has no application to this case. (*Story on Contracts,* 551. *Mitchell* v. *Reynolds, Wms. Rep.* 181. 1 *Smith's Leading Cases,* 430. *Lawrence*

Bloss *v.* Bloomer.

*v. Kidder*, 10 *Barb*. 641.  5 *Mass. Rep.* 223.  7 *Cowen*, 307. 2 *Parsons on Contracts*, 252, 254.)

V. The agreement is not against public policy.  "An agreement in not void on this ground, unless it *expressly* and *unquestionably* contravenes public policy and be *manifestly* injurious to the interests of the state."  (*Chitty on Contracts*, 664, 658, 659.)

*By the Court*, E. DARWIN SMITH, J.  The legislature, in an act entitled " An act to punish and prevent fraud in the use of false stamps and labels," passed May 14, 1845, (*Sess. Laws of* 1845, *ch.* 279, *p.* 304,) has declared it a misdemeanor either to " counterfeit such stamps or labels with intent to defraud, or to vend goods &c. thus stamped, without disclosing the fact to the purchaser."  And this court protects the title of the author or inventor of any names, marks, letters or other symbols which any manufacturer, trader or other person has devised and appropriated or been accustomed to use in his trade or business, and restrains by injunction any unauthorized use thereof to his prejudice.  (*Taylor* v. *Carpenter*, 11 *Paige*, 292.  *Coats* v. *Holbrook*, 2 *Sandf. Ch. Rep.* 586.  *Partridge* v. *Menck*, *Id.* 622.  2 *Barb. Ch. Rep.* 101.  *Bell* v. *Locke*, 8 *Paige*, 75.)

If the legislature and the courts are thus sedulous to protect the rights of individuals in respect to their own inventions, labels and devices, it would seem to be implied that such individuals should not themselves attempt or allow any imposition upon the public by the false and fraudulent use of such labels, devices and names or inventions, for the sale of spurious or simulated articles.  The fact that the defendant contracted to purchase, and the plaintiffs to sell, a large number of empty papers or bags for seeds, with the plaintiffs' labels thereon, implies, as was doubtless the fact, that the plaintiffs had acquired a high credit with the public for the good qualities of their seeds, and that their labels upon bags or papers of seeds would secure for them a ready sale and at appreciating prices.  Money received by the defendant on the sale of the seeds he was to put in these bags and papers sold to him by the plaintiffs, would

be money obtained by deceit and fraud, if not by false pretenses. Perhaps the provision in the contract, that the defendant should fill the bags with seeds of a good quality, might save the parties from a conviction for a conspiracy to commit an act "injurious to trade or commerce," under subdivision 6 of section 8, chapter 1st of part 4th of the revised statutes. But if it be a crime to counterfeit labels, words or devices previously appropiated to distinguish property, or to vend goods thus stamped, without disclosing the fact to the purchaser, it is equally an offense against the spirit of the law, equally injurious to trade and commerce, and equally an imposition upon the public to palm off spurious goods under cover of genuine labels and devices. Contracts to do this are clearly against public policy, and should not be upheld and enforced by the courts. The demurrer in this case to the second cause of action—as the consideration is entire—is well taken, and the decision of the special term should be reversed.

[MONROE GENERAL TERM; March 2, 1857. *T. R. Strong, Welles* and *Smith,* Justices.]