## CHARLES C. JEROME

### *v.*

## CHARLES BIGELOW.

1. CONTRACT—*void as against public policy.* No man has the right to sell his reputation or skill in any profession, whatever it may be, and thus enable an unknown party to perpetrate a fraud upon the public in his name.

2. A contract by one physician with another, whereby the latter takes the office of the former for a given term, and is licensed to practice medicine in the name of the former, to personate him when applied to by patients requiring medical treatment, and to prescribe for them in his name, is contrary to public policy and will not be enforced.

APPEAL from the Superior Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in chancery, filed by the appellant against the appellee, for an injunction to restrain the appellee from violating an agreement relating to the practice of medicine, which is sufficiently stated in the opinion of the court. The bill was dismissed, and the cause brought to this court by appeal.

Messrs. MONROE, BISBEE & GIBBS, for the appellant.

Mr. SIDNEY SMITH, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was for an injunction and relief. The parties are physicians, and were practicing their profession as specialists in the city of Chicago.

The decision of the case turns upon the construction that shall be given to the contract of the 10th of May, 1870, and the supplemental agreement.

The substance of the agreement is, that appellant should take possession of the office theretofore occupied by appellee, with everything belonging to it, and by the express terms of the contract, he was authorized and licensed to carry on and conduct the business of a doctor of medicine in the special departments thereof in which appellee had previously been engaged, in all its branches at his discretion, in the same office, in the name and under the patronage and good will of appellee, from the 10th day of July, 1870, for and during the period of ten years next thereafter, in consideration of which appellant was to pay appellee the sum of $4000 per annum, in semi-annual payments, until the sum of $40,000 should have been paid.

The construction given to the contract by the counsel for appellant, is, that by its terms appellant was licensed to practice medicine in the name of appellee, to personate him when applied to by patients requiring medical treatment, and to prescribe for them in his name; that he was not bound to explain to such persons that he was not, in fact, appellee. It is said that "it was perfectly natural he should be called for and addressed" by the title of appellee. It is not denied that he was applied to by persons in need of medical assistance under the belief that he was appellee; that he represented himself to them as such and accordingly treated them.

Assuming this to be the true construction of the contract, we have no hesitation in pronouncing it contrary to public policy.

It may be that appellant is as good a physician as appellee, and quite as skillful in the treatment of disease. But that is not the question. Persons in need of medical aid are entitled to the physician of their choice, and he who personates another in that regard and thus imposes on that unfortunate class of persons, commits a great wrong. A contract that licenses and permits such practices, is absolutely vicious, and a court of equity will never enforce it. It may have been, in this case, that persons living at a distance, who may have heard that appellee possessed some skill in the treatment of certain diseases, applied to him for medical advice, and would not get it, but would get that of another physician of whom they had never heard. It is a proposition too plain for argument, that through such a contract the public might be grossly imposed upon. If it were possible for an eminent physician, celebrated throughout the country for his great skill and experience in the treatment of disease, to make such a contract with an inexperienced physician, it would impose upon an unfortunate class of persons a most cruel and iniquitous deception. It would hardly be possible to conceive what sort of a contract would be more mischievous in its tendencies or cruel in its practical results.

It is immaterial what may be the relative medical attainments of these parties. The principle would be the same, whether their attainments and skill in treatment of disease were equal or unequal. No man has the right to sell his reputation or skill in any profession, whatever it may be, and thus enable an unknown party to perpetrate a fraud upon the public in his name.

This is not a case of a sale of the good will of a business that can be as well transacted by one person as another; and the cases cited by counsel, supposed to be illustrative of the principles that govern such cases, can have no application. It is not possible to assimilate the case under consideration to a case of the sale of the good will of a business, and maintain it on that ground. The one is lawful and the other is unlawful.

The principles of the following cases, in some degree, elucidate the case at bar: *Bell* v. *Locke*, 8 Paige, 74; *Taylor* v. *Carpenter*, 11 Paige, 299; *Bloss & Adams* v. *Bloomer*, 23 Barb. 604; *Cornelius* v. *Walsh*, Breese, 98.

Both parties are equally involved in the turpitude of this transaction. The law will not assist either, but will leave them to the consequences of their own contract.

The bill was properly dismissed, and the decree is affirmed.

*Decree affirmed.*