# WILLIAM SPURGIN

*v.*

## MARIA TRAUB *et al.*

1. FRAUD—*to justify the setting aside of a deed of trust.* A court of equity will not set aside a deed, on the ground that its execution was procured by fraudulent misrepresentations, without the clearest proof of the same; and where the grantee was not a party to such fraud, it must appear that the grantor seeking such relief was not guilty of any negligence, but used reasonable diligence to prevent being imposed upon.

2. So, where a husband and wife executed a mortgage upon their homestead, the title of which was in the wife, to secure a debt of a firm of which the husband was a member, and the wife filed a bill in equity to cancel the mortgage, on the ground that she was induced to execute the same under the belief that it was upon other property; and it appeared that she was unable to read or write in English, and spoke the language imperfectly; and she testified her husband, and the notary who took her acknowledgment, represented to her that it was upon her husband's brewery lots, and that the mortgage was not explained to her, in which she was corroborated by her son, a boy 10 or 11 years old, which was expressly contradicted by the testimony of the husband and the notary, the latter

also testifying that he read over the mortgage to her, and upon being asked if she understood the contents, replied in the affirmative; and the proof showing that the mortgagee was not present, and failing to show the least degree of bad faith on his part: *Held,* that the proof fell short of that required in such a case to authorize the relief sought; and that if the wife did not understand the mortgage, it was her duty to have understood it before she suffered it to be delivered as her valid mortgage into the hands of an innocent mortgagee; and if she did not make use of reasonable diligence to acquaint herself with the facts, equity would not relieve her as against the mortgagee, who was without fault.

3. And it seems, where a person, without any fraud on his part, takes a mortgage in good faith from a husband and wife to secure a just debt, the court would hesitate long before they would set it aside, even if there was undoubted proof that its execution by the wife was procured through the fraudulent misrepresentations of the husband, and that the wife had used due diligence to ascertain the contents of the mortgage.

4. ACKNOWLEDGMENT OF DEED—*by married woman, under act of* 1869. Under the act of 1869, the acknowledgment of a married woman may be the same as if she were *sole.*

APPEAL from the Circuit Court of Tazewell county; the Hon. CHARLES TURNER, Judge, presiding.

Messrs. STEVENSON & EWING, for the appellant.

Mr. B. S. PRETTYMAN, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the 5th day of February, 1870, William Spurgin, the appellant, having a claim against Louis Traub and one Herbig, who were in partnership as brewers, of about $800, for a car load of malt sold to them, which they had made default in paying, it was agreed between Spurgin and Traub that if the former would extend the time of payment of the claim, and sell and deliver to Traub & Herbig another car load of malt for $800, Traub & Herbig would make their two notes, for $800 each, to Spurgin, payable at certain future times, and that Traub and his wife, Maria Traub, to secure the payment of the notes, would execute to Spurgin a mortgage upon lot six, in a certain addition to Pekin, in this State, the title to

which was in the said Maria, and which she and her husband occupied as a homestead.

The notes and mortgage were accordingly executed on the 5th of February, 1870, and the car load of malt delivered.

One Sawyer having a prior mortgage, executed by Traub and his wife on the same lot, for $300, Spurgin purchased the same, and filed his bill for the foreclosure of both mortgages.

Thereafter, Maria Traub filed her bill in chancery to have the mortgage to Spurgin cancelled, the bill alleging her inability to read or write English, and that her execution of the mortgage was fraudulently procured through collusion between Spurgin, her husband, and one Purple, the notary public who took her acknowledgment; that by means of the fraudulent misrepresentations of the two latter, that the mortgage was upon two lots in Pekin whereon was situate the brewery owned by her husband and Herbig, in partnership, she was induced to execute the mortgage under the supposition that it was on the two brewery lots, and not on her homestead, lot six, upon which latter she would not have executed a mortgage; the bill further alleging a defect in taking her acknowledgment, in that she was not truly informed of the contents of the mortgage, nor examined separate from her husband.

The court below consolidated the two suits, and decreed a foreclosure of the Sawyer mortgage, and a cancellation of the mortgage to Spurgin. Spurgin appeals.

The only testimony in support of the bill is that of Mrs. Traub and her boy. The sum of her testimony is, that she could not read or write English; that, at the time the mortgage was executed, she inquired of her husband what property it was on, and he informed her the brewery property; that she made the same inquiry of her boy, and he informed her the same; that Purple, the notary public, read the mortgage over to her, but she could not understand it; that she imperfectly understood what Purple said; that she executed the mortgage under the belief that it was on the brewery lots,

and not on her homestead. Her boy, who was at the time between 10 and 11 years of age, corroborated his mother as to the statement of both his father and himself to her, that the mortgage was on the brewery property. He says he did not read the mortgage himself.

Louis Traub, the husband, denies making any statement to his wife that the mortgage was on the brewery property. He states that his wife inquired what the mortgage was for, and he told her it was for malt for the brewery; that that was the only inquiry she made; that she never asked him if the mortgage was on the brewery or on the homestead.

Purple, the notary public who took the acknowledgment, testifies that he read over the mortgage to Mrs. Traub, and inquired of her if she understood the contents of it, and she answered in the affirmative. He says she spoke to her boy, William, and, he thinks, told him to get out of the way as she approached the table to sign the mortgage, and he immediately got out of her way; that the boy did not read the mortgage; that the mother did not ask the boy anything about the mortgage, and the boy did not say anything to her about the same; that he would have heard any conversation between them.

Spurgin was not present at the time of the execution of the mortgage, and there is nothing in the testimony to indicate, in the least degree, any want of entire good faith, on his part, in taking the mortgage.

A court will not set aside a deed on the ground of fraudulent misrepresentations, without the clearest proof of the same. 1 Story Eq. Jur. sec. 200.

The measure of proof in this case falls short of that required. The testimony of Mrs. Traub, as to the misrepresentation made by her husband, is counterbalanced by his own testimony in denial thereof. The testimony of her boy, William, upon the same point, and also as to his own representation, is to be considered in view of his tender years, and that his testimony may have been influenced by the repeated

conversations he admits his mother had with him upon the subject.

The statements of them both, that the boy also represented that the mortgage was on the brewery property, are affected by the testimony of Purple, the notary public, that no conversation was had between them in respect to the mortgage.

Mrs. Traub testifies that she did not understand the mortgage. But it was her business to understand it before she suffered it to be delivered as her valid mortgage into the hands of an innocent mortgagee, who parted with his property on its faith. A person is not to be admitted to avoid his deliberately executed deed, where the grantee is without fault, on the allegation that he did not understand it. Mrs. Traub had resided in Pekin 21 years. She understood English, to some extent. Still, if she could not read the mortgage herself, and did not understand, from the reading of it to her by the notary public, what property it conveyed, she should have made use of reasonable diligence to acquaint herself with that fact before executing the mortgage. She says she made inquiry of her husband, but as she made the same inquiry also of her boy afterward, that would imply distrust of her husband; and she says the reason she inquired of her ·boy, was that she thought she would be deceived. But it was sheer negligence and folly to resort to, and rely upon, such a source of information—a boy, between 10 and 11 years of age, who had not read the mortgage. Why did she not inquire of the notary public present, a disinterested officer of the law, to whom she imputes no misconduct in her testimony, or signify to him that she did not understand the contents of the instrument, so that he might have had them made known to her through an interpreter, if necessary? Or why not have recourse to some other reliable source of information? It was her fault not to use the means of knowledge within her reach, and any loss or injury in such a case may properly be imputed to her own negligence and indiscretion. Courts of equity do not sit for the purpose of relieving parties, under ordinary

circumstances, who refuse to exercise a reasonable diligence and discretion. 1 Story Eq. Jur. sec. 200 (a).

It is an alarming proposition, as regards the security of titles, that a married woman, after having executed a deed in apparent conformity with all the requirements of the law, can· have the same set aside, on making proof of fraudulent misrepresentations to her by her husband and son of the contents of the deed, to which misrepresentations the grantee was in nowise privy.

Even were the proof of such misrepresentations undoubted, and were there no evidence of the lack of diligence in obtaining knowledge of the contents of the mortgage, we should have hesitated long before relieving against and annulling it in such case.

As to the acknowledgment, the certificate thereof appears to be conformable to· the statute; there is no sufficient proof to impeach it, and, besides, the acknowledgment of the deed of a married woman may be the same as if she were *sole.* Laws 1869, p. 359.

The decree of the court below must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*