CAROLINE SCHAPER *et al.*

*v.*

MARIA SCHAPER.

1. FRAUD—*in obtaining deed from married woman* Where a man whose wife was unable to speak or comprehend the English language had a deed of trust prepared, in which his mother was the beneficiary, which he signed, and he and his mother induced the wife to sign it, the wife not knowing what it was, and they, acting as interpreters between her and the officer taking the acknowledgment, the wife and the officer not being able to understand each other, induced the officer to believe that she understood its nature and purport, and to certify that she acknowledged it, when in truth they did not explain it to her or tell her what it was, it was *held*, that the deed of

trust was, on a bill filed by the wife, properly canceled, and that the parties should be remitted to their rights as they existed before the execution of the deed of trust.

2. HOMESTEAD—*in what manner to be secured.* Where husband and wife were in the occupancy of premises jointly with other tenants in common, and, upon a pretended sale by the latter of their interests to the husband, the wife was induced by fraud to join in the execution of a deed of trust upon the entire property to secure the purchase money, upon bill filed by the wife to cancel the whole transaction as fraudulent, the court should not decree to the wife a homestead in the land, but simply remit the parties to their original rights.

APPEAL from the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. J. G. KŒSTER, for the appellants.

Mr. C. A. WALKER, and Mr. WM. R. WELCH, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 21st of November, 1874, Herman Schaper, the husband of Maria Schaper, bought or pretended to buy of his mother, Caroline Schaper, and his brother, Christian Schaper, who then conveyed to him by deed, their undivided interest— the one as widow and the other as devisee—in the lands whereof his father, Christopher Schaper. died seized, and also to buy of the said Caroline twenty acres of other land, which she then conveyed to him by the same deed, and certain personal property, which she claimed to own individually. In consideration thereof he gave Christian his promissory note for $3000, and Caroline his promissory note for $5247, both bearing that date and being payable in one year, with interest on the respective amounts at the rate of ten per cent per annum. To secure the notes. he executed a deed of trust of the entire real estate to one Burton, as trustee, and he also gave Caroline a chattel mortgage on the personal property. The deed of trust purports to have been executed and acknowledged by Maria, who is joined therein with her husband, Herman, as relinquishing her homestead and right of dower in the lands.

The bill is by Maria Schaper and against Herman, Christian and Caroline Schaper, and charges that the execution of the deed of conveyance by Caroline and Christian to Herman, the promissory notes by Herman to Caroline and Christian, the deed of trust by Herman to Burton, and the chattel mortgage by Herman to Caroline, was in bad faith, and for the sole purpose of defrauding her of her rights in the property of her husband, and that her signature to and acknowledgment of the deed of trust were obtained by imposition and fraud. The prayer is, that these several instruments be canceled and set aside, and complainant remitted to her rights with reference to the property as they were before their execution.

The court below found that the evidence sustained these charges, and decreed the cancellation, etc., of the instruments, and this ruling involves the first and principal question discussed in the arguments before us.

Complainant's evidence fully sustains all her allegations, but as respects much of the material part of her evidence, she is directly contradicted by the evidence of Caroline and Herman, as well as by their sworn answers. Thus, she denies that she had any knowledge that she signed the deed of trust; they say she was perfectly advised of its contents and nature, and signed it deliberately. It is, therefore, necessary to examine the evidence of other witnesses, and such undisputed facts and circumstances, having a tendency to throw light upon the transaction, as there may be in the case, to determine where the truth most probably lies in this conflict.

An important fact, which we think sufficiently proved, in favor of the complainant, at the outset, is, both Herman and Caroline were, prior to the time of the execution of these instruments, anxious to get rid of complainant without allowing her to have any property. Complainant and Herman were married the 21st of December, 1873, and immediately thereafter they went upon the farm and resided with Caroline and Christian. After the lapse of a few months, an estrangement commenced between Caroline and complainant, which, at first, led to their occupying, for residence purposes, entirely separate

rooms, and finally seems to have become so intensified, on the part of Caroline, at least, as to render habitation under the same roof impossible. Caroline is shown to be a woman of great energy and industry, but unfortunately possessed of a bad temper and some capacity for trickery and cunning management. Her influence over her sons is very great. Soon after she became estranged from complainant, and probably as a result thereof, Herman became dissatisfied with complainant, and he shows that this feeling of alienation increased until he could not endure to live with her.

Mr. Winters, an apparently disinterested and respectable witness, testifies: "I had some talk with Caroline Schaper about complainant in the latter part of the year 1874, and Mrs. Schaper said she could not get along with her—she did not know how to do housework, nor could she learn to do cooking; and she said Herman was in great trouble about it, because he should have to keep the woman for lifetime, and she asked me which would be the easiest way to get that woman away, and I told her to give that woman $2000, and compromise the matter, as that would be the easiest and best way; and Mrs. Schaper said, that complainant brought nothing there, and that she would not give her anything."

The execution of these instruments, and the subsequent abandonment of the complainant by Herman, needed, as the sequel has shown, only the prompt action of Caroline to enforce the deed of trust and the chattel mortgage, to furnish a satisfactory answer to the question thus ineffectually propounded to Winters. That the result would be that all the property would go to satisfy the deed of trust and chattel mortgage, must have been as obvious to Caroline and Herman, when they were executed, as it was when the notes they secured matured without even the interest being paid. For, it is not pretended that Herman had any other estate, or the expectation of money from any other source, out of which he could make the payments. His pretense that he expected to make it out of a wheat crop, then on the land, is worse than idle. The number of acres in wheat was only sixty. The total debt was $8247,

to which add one year's interest, at ten per cent, $824, and we have $9071, which he would have had to realize, being something over $150 per acre. Nor can it be said he expected an extension of time? ⸢ If he did, he should have had some tangible assurance that he had a right to expect it. It should have been provided for in the deed of trust and chattel mortgage. But, instead of this, both notes were absolutely payable within a year.

The chattel mortgage required the property covered by it to be sold, if the debt and interest was not promptly paid when due; and the deed of trust provided, that, "in case of default in the payment of said notes, or either of them, or any part thereof, or the interest accruing thereon, according to the tenor and effect thereof, or in the payment of any taxes or assessments, ordinary or special, which might be levied or assessed against said premises during the continuancy of the deed, on the application of the legal holder of either of the notes," the trustee, etc., should proceed to sell the property therein described, after giving notice of such sale for four weeks in a newspaper published in Carlinville, or by posting up written or printed notices, for a like time, in four public places in the county.

But, it might be suggested that he had reasonable expectations of reselling the property in time to save himself against loss. In answer to this, however, it is to be considered that he could have had no motive in buying property merely that he might resell it to get money to pay for its purchase. And yet, on the basis of valuation fixed by Caroline, which is evidently a very high one, he could not have expected to have resold it at what it cost. She fixes the valuation thus: 160 acres at $40 per acre, 86 acres at $25 per acre, and 20 acres at $10 per acre. This would make her total valuation of the land $8750. But that includes Herman's interest, which they estimated at $3000. Deducting this, it leaves the interest in the real estate sold by her and Christian, worth, in her opinion, $5750, to which add the estimated value of the personal property sold, $2427, and we have a total of $8177, or $70 less

than Herman was to pay for the property. But even she does not undertake to say the property could be sold for the prices she puts upon it, and the only disinterested witness who speaks of the value of the land (Mr. Yowell) says, it could not have been sold for over $4000.

There was, moreover, a material circumstance which must necessarily have affected the value of the title which Herman obtained, and tended greatly to diminish the price he could resell it for, and which was known to these parties at the time: Christian was an imbecile, and incapable of managing or selling property, and this sale of his interest, therefore, at some future day might give trouble to the purchaser.

In any view we have been able to take of this transaction it is suspicious, and it would seem, if the purpose really was to deprive complainant of all interest in the property, no device more admirably adapted to that end could easily have been discovered.

But, we think, the character of the transaction has an important bearing on the case in another respect. It is so reckless and unwise, as respects the interests of Herman, that no woman of common prudence, as his wife, would ever become a party to it.

The only property that complainant had any claim upon to support herself and child, was Herman's interest in this property, covered by the deed of trust. Is it reasonable that she should consent to imperil it all by a deed of trust maturing in a year, to secure a sum of money which she knew there was no probability of being otherwise paid than by the sale of the entire property, and this, too, to one she knew disliked her, and would be but too willing to take an advantage of her? We think not.

The proof of complainant's acknowledgment rests entirely upon the evidence of Herman and Caroline, for we think Christian's evidence, by reason of his unfortunate condition and his mother's control over him, entitled to very little consideration. Whether it is veracious or not, manifestly depends entirely upon her.

Complainant is a German woman, and when the acknowledgment was taken she was unable to speak or comprehend the English language. The justice of the peace taking the acknowledgment was unable to speak or understand German. The only medium of conversation was Herman and Caroline. Whether they communicated to her what the justice requested them truly or not, he does not and could not know. They say they did—she says they did not. She says she did not know what a deed was. She signed because Herman told her to, and thought it was a note.

This case differs from *Spurgin* v. *Traub*, 65 Ill. 170, in that there the mortgagee acted *bona fide*, and without notice that Mrs. Traub was imposed upon and deceived in signing and acknowledging the mortgage, while here, if complainant has been deceived and defrauded, it is by the contrivance and assistance of the beneficiaries in the deed of trust. If there are fraud and imposition, there are no innocent mortgagees. And in this respect the case also differs from all the other cases cited by the counsel for the defendant. In most, if not all of them, there was no question but what the wife signing knew what she signed, and in none of them was the mortgagee, or *cestui que trust*, party to a deception upon her in that respect.

We regard it as an unfavorable circumstance, that, in this transaction, some disinterested person was not called in who understood and spoke both languages, especially as complainant's husband, who ought to have been her friend and protector, was, in reality, her enemy.

Another very strong circumstance tending to show that complainant's version is true, and that she was designedly deceived in signing the deed of trust, is this: Herman, Christian, Caroline and complainant went, together, to Carlinville, which is distant from where they were residing some eight miles. When they arrived at Carlinville, complainant was left at the house of her uncle, but the others went to the office of an attorney at law who understood and spoke both English and German, and had him prepare the deed from Caroline and

39—84TH ILL.

Christian to Herman, the deed of trust. and chattel mortgage, and promissory notes, and the deed of Caroline and Christian was signed, though not acknowledged, there. Why were Caroline and Christian there, and why was complainant not there? Her being left at her uncle's is not shown to have been a necessity, and it does not appear that the object of the others in going to Carlinville was other than to have these instruments drawn. Complainant was not even informed of what had been done at the attorney's office. It would seem evident that Caroline felt that it was necessary to be there herself, and have Christian there, in order that the papers should be drawn to meet her views, and it is difficult to resist the conclusion that complainant was not there, nor informed of their purpose to be there, by design.

On the whole, we are satisfied with the conclusion reached by the court below, so far as the cancellation of the instruments is concerned.

But the court decrees complainant a homestead in the 160 acres of land. Now. while it is true that the 160 acre tract was occupied by Herman and complainant as a homestead when he deserted and abandoned her, yet that was wholly so only by virtue of the transaction which is now repudiated as fraudulent. Before then, their occupation of the property was not exclusive, but jointly with Caroline and Christian, and all that equity can do is to remit the parties to their rights as they were before that transaction.

The decree of the court below must, therefore, be modified, and for that purpose the cause will be remanded. The costs in this court, however, will be taxed against the appellants Caroline and Herman, equally.

*Decree reversed in part.*