ELIZABETH COMPTON

*v.*

THE BUNKER HILL BANK *et al.*

*Filed at Springfield September 30, 1880.*

1. CHANCERY—*setting aside a deed for fraud, duress, etc.* Where a wife executed and acknowledged a deed conveying her land to a bank whose money her husband had embezzled to a large amount, to save him from arrest and criminal prosecution, and it appeared that the wife was urged to make the conveyance by her husband and brother, who informed her that if she would do so the bank would not prosecute, and the bank had no knowledge of any such representations being made to induce the execution of the deed, nor authorized any to be made, and none of its officers had any conversation with the grantor on the subject, it was held that a court of equity would not set the deed aside for fraud, duress, or imposition.

2. FRAUD—*by third persons, as against grantee in deed.* If a person is induced to execute a deed for land to another, through the false representations of a third person having no authority to act for the grantee, and the latter had no knowledge that such representations had been made, prior to receiving the deed, nor any person authorized to act for him, the grantee will not be affected by such fraudulent representations.

3. DURESS—*threats of arrest.* Where a person has committed a crime, a threat to have him arrested and imprisoned, being only a threat of a lawful arrest, will not constitute duress, in any such sense as will discharge him from liability upon a contract to indemnify the person injured by the commission of the offence.

4. CHANCERY—*setting aside deed made for unlawful purpose.* While a court of equity will not lend its aid to enforce the performance of a contract which has been entered into by both parties for an illegal purpose,—yet when the contract has been executed by one party by conveying real estate for the

purpose of compounding a felony, the court will not in general interfere, but will leave the title to the property where the parties have placed it.

5. JURISDICTION *of appeals in chancery cases.* Under the act of 1879, amendatory of the Practice act, section 88, appeals and writs of error lie in chancery cases precisely as in cases at law, so that if a freehold or franchise is involved in a suit in chancery it may be brought directly from the trial court to this court for review.

APPEAL from the Circuit Court of Macoupin county; the Hon. W. R. WELCH, Judge, presiding.

Messrs. YANCEY & RICHARDS, and Mr. L. P. PEEBLES, for the appellant:

It has long been settled that a man may avoid his act: 1st, from fear of loss of life; 2d, of loss of member; 3d, of mayhem, or great bodily harm; 4th, of imprisonment. Bacon's Abridg. Decrees, 253; *Fass* v. *Hildreth,* 10 Allen, 76; *Foshay* v. *Ferguson,* 5 Hill, 154; *Bogle* v. *Hammons,* 2 Heisk. 136; *Belote* v. *Handeson,* 5 Cold. 474; *Baker* v. *Martin,* 12 Wall. 158; *Branden* v. *Piece,* 7 id. 214; *Helm* v. *Helm,* 11 Kane, 14.

The modern tendency is to overthrow every thing which is built on fraud or violence. *Foshay* v. *Ferguson,* 5 Hill, 158; *Tapley* v. *Tapley,* 10 Minn. 458; *United States* v. *Huckabee,* 16 Wall. 432; *Walbe* v. *Parker,* 5 Cold. 476; *Mann* v. *Lewis,* 3 W. Va. 223; *Mann* v. *McVey,* 3 id. 238; 1 Pars. Cont. (5 ed.) 395.

When a contract is procured to be executed under a threat of arrest under a warrant, it has been held to be void, not only because it was given under duress, but because it is against public policy to permit such abuse of process. *Bane* v. *Detrich,* 52 Ill. 20; *Fay et al.* v. *Oatley,* 6 Wis. 42; *Henderson* v. *Palmer,* 71 Ill. 579; 1 Pars. Cont. (6th ed.) 392; *Foshay* v. *Ferguson, supra.*

Father and son may each avoid his obligation obtained by duress of the other, and so husband by duress of the wife, and conversely the wife may avoid her act by the duress of the husband. Bac. Abr. "Duress" B; *Plummer* v. *The Peo-*

*ple,* 16 Ill. 360; *Brocks* v. *Berryhill,* 20 Ind. 87; *Eadie* v. *Shurmon,* 26 N. Y. 9; *Green* v. *Scranage,* 19 Iowa, 461.

A contract obtained by threat and fear of battery, or arrest or imprisonment, or destruction of property, may be avoided on the ground of duress—for there is nothing but the form without the substance—it wants the voluntary assent of the party to be bound by it. *Bane* v. *Detrich, supra; Spaids* v. *Barrett et al.* 57 Ill. 292; *Oates* v. *Hudson,* (6 Exch.) 346; *Nelson* v. *Suddaeth,* 1 Hese & Muf, 350; *Saspartas* v. *Jennings,* 1 Bay S. C. 470.

Where money and other valuable things is paid to prevent a criminal prosecution, the contract is immoral and clearly against the law.

If money is paid *on an agreement* not to prosecute for a criminal offence, it would be compounding a felony, and would of itself constitute a crime indictable and punishable as such. *Brothdell* v. *Braider,* 51 Ill. 234; *Commonwealth* v. *Peas,* 16 Mars. 91; *Collins* v. *Blantar,* 2 Wils. 347.

It is doubtless true that under our statute a person may receive compensation for the private injury occasioned by the commission of the crime, yet if there is any promise or agreement *not to prosecute* held out as an *inducement* to make such reparation, this would be compounding a crime, and *that part* of the consideration would be illegal and would vitiate, and render the whole contract void. The general rule being that if any part of an entire agreement or promise is illegal, it taints the whole transaction and a deed based upon such an agreement would be void. 1 Parsons on Cont. 456; *Henderson* v. *Palmer,* 71 Ill. 579; *Burks* v. *Albe,* 26 Vt. 184; *Derring* v. *Chapman,* 22 Me. 488; *Dedham Bank* v. *Checkering,* 4 Pick. 314; *Carlton* v. *Bailey,* 7 Foster (N. H.) 230; *Hoover* v. *Price,* 27 Miss. 113.

Messrs. John M. & John Mayo Palmer, for the appellees:

The sole object of the bill filed by the appellant in the court below, is to compel the cancellation of a single deed of

conveyance made by herself to one of the appellees.    *Enos et al.* v. *Hunter*, 4 Gilm. 211.

The facts disclosed by the record are that the husband of the appellant, a trusted employee of the bank, embezzled a large sum of its money.

That the husband of the appellant, for reasons of his own, and without the participation of the officers of the bank in the effort, induced her to execute the deed in question.

All the testimony shows that the officers of the bank did no more with respect to the deed than to accept it; so that the allegation contained in the bill of "threatening to arrest her husband," is unsupported.

The authorities cited for appellant, numerous as they are, must be considered wholly inapplicable, for no duress is shown with respect to the appellant or her husband.

The testimony shows that the wife was profoundly concerned in the situation of her husband, and united with him in making partial restitution to the bank.    Her anxiety for his safety from prosecution was a powerful motive for her conduct; but there is nothing in the circumstances or the conduct of the officers of the bank, who are but trustees for unfortunate creditors, which renders it proper that the deed in question should be set aside.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill in equity by appellant against appellees, to set aside a deed of a house and lot, on the ground that it was executed by reason of fraud, duress and imposition.

The court below decreed that the bill be dismissed.

The facts on which the relief is sought, are: George Compton, the husband of the appellant, was cashier of the Bunker Hill Bank, a corporation doing a general banking business at Bunker Hill, Macoupin county, Illinois.    It was discovered that he and one J. A. Beach had embezzled the funds of the

bank, and upon being interrogated in reference thereto, he admitted that he had used funds of the bank to the amount of about $6,000. This admission was made on the 23d of October, 1877. On the same day the board of directors of the bank unanimously adopted and entered upon their records, the following resolution :

"WHEREAS, Messrs. J. A. Beach and George Compton, having, by their statement to the board of directors, shown a deficit in the money belonging to the bank, for which they are responsible, amount of said deficit not at this time known, that in consideration of said Beach and Compton making a full statement of the amount due, and also making the bank secure in way of deeds to real estate and transfers of personal property, so far as they in their power can do, we hereby agree and promise that no criminal prosecution will be made against them by the board."

Compton subsequently admitted that the amount which he had appropriated, belonging to the bank, was $7,781 25.

On the same day, and after the adoption of the resolution, the deed in controversy was executed.

The circumstances connected with the execution of the deed, are thus detailed by the appellant in her evidence: "All I knew about the officers of the bank charging him" (her husband) "with embezzlement, is what I heard from the outside and from my husband; he told me the officers of the bank were going to hold him and Mr. Beach accountable for the losses. On or about the 23d of October, 1877, I signed what they said was a deed; I neither read it nor had it read in my presence; my sister Hellen, my brother Frank, Mr. Harry Budd, Mr. Compton, and my daughter Fanny, were all who were present when the deed was executed; I received no consideration for the deed; the inducement offered me was, my brother Frank came to me and said the people were all angry with my husband. By that I thought he meant all the bank people, officers and depositors, and that in order to appease them, and save my husband, and save him from the

20—96 ILL.

penalty of the law, I ought to part with everything, even to my wardrobe; and he said, 'In fact, you must do it.' And when I signed the deed, I said to my husband, ought I not to have some written promise from the bank that it was to save him from all further difficulty? And he said it was recorded on the minutes of the bank, and that was the same as a written promise to that effect, and I stated that on those conditions I signed the deed. I was under great nervous excitement at the time, and can't distinctly recollect all that was said. I do remember, however, that my brother said that they would imprison my husband if I did not sign the deed. Mr. Compton said that the bank had agreed, and it was on the minutes, to release him from criminal prosecution, if I would sign the deed."

Other evidence clearly shows that neither the directors of the bank, nor any one else representing the bank, were present when the deed was signed, or had any conversation with appellant in regard to signing it. The deed was produced by appellant's husband, signed and acknowledged by himself and her, and by him delivered to the bank. And it is also shown that no one representing the bank had any knowledge of the representations that were made to appellant, to induce her to execute the deed. The suggestion of appellant's counsel that appellant's husband, in this transaction, was representing the bank, is contrary to the unquestioned facts. He was representing himself, and trying to screen himself from a just prosecution at the hands of the bank, for the crime of embezzling its funds, and it was to aid him in this that appellant executed the deed. Appellant's brother, as he admits, acted, as he thought at the time, in the interest of appellant and her husband. Certainly, he had no authority to act on behalf of the bank, and he did not assume to have such authority.

Even then, if appellant was induced by false representations of her husband and brother to execute the deed, since those representations were neither induced by, nor made of

the knowledge of, those representing the bank, the bank can not be affected by them. *Spurgin* v. *Traub et al.* 65 Ill. 170; *Marston* v. *Brittenham*, 76 id. 611.

The guilt of appellant's husband is clear and is not controverted; and, therefore, any threat which may be implied, from the resolution of the board of directors, to prosecute him for the offence of which he was thus guilty, does not constitute duress. *Eddy* v. *Herrin*, 17 Me. (5 Shepley) 338; *Whitfield* v. *Longfellow*, 13 id. 146.

The *gist* of appellant's case is that her deed was executed in consideration of an agreement to compound a criminal offence, which is in contravention of law, and she has not realized therefrom the result that she anticipated.

We said in *St. L., J. & C. R. R. Co.* v. *Mathers*, 71 Ill. 598: "A court of equity will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of doing that which is illegal; and where such a contract has been executed by one of the parties by conveying real estate, a court of equity will not, in general, interfere, but will leave the title to the property where the parties have placed it." This is but the repetition of an old and well established principle of equity jurisprudence, and it was previously applied by this court in *Jerome* v. *Bigelow*, 66 Ill. 452 and *Liness* v. *Hesing*, 44 id. 113.

The same principle controled in *Reed* v. *McKee et al.* 42 Ia. 689, cited by appellant's counsel, but that case differed from the present, in this: It was a bill to foreclose a mortgage given to secure certain promissory notes, which had been given to compound a crime of embezzlement. The contract was still executory, and the court would not lend its aid to enforce its performance. In the present case, on the contrary, the contract has been fully executed and the property conveyed, and the court is asked to lend its aid to open it up, cancel it and set aside the conveyance. *Allison* v. *Hess*, 28 Ia. 389, is more analogous. There, the conveyance had been

made to compound the felony of the son of the petitioner, and the court held that the conveyance could not be set aside, observing: "And the rule seems to be well settled, that where a contract is illegal, whether it is because of being *malum prohibitum* or *malum in se,* the law will not afford affirmative relief to either, but will leave the parties as it found them." Like ruling obtained in *Inhabitants of Worcester* v. *Eaton,* 11 Mass. 377. *Smith* v. *Rowley,* 66 Barb. 503, is almost literally the same as this case. There, a married woman filed her bill to set aside her conveyance, upon the alleged ground that it was obtained from her by duress and undue influence. Her husband was charged by the defendant with embezzlement from him, to a large amount, and she claimed that she executed the deed in question, under an understanding and implied agreement that in case she executed the deed in question, the defendant would refrain from prosecuting her husband for the embezzlement.

The husband's guilt was clear, and the deed was executed upon his request. The court said: "If her story is correct, the deed would seem to be void, on the ground that it was executed in consideration of compounding a criminal offence, and was contrary to the statute. But though the deed may be void for such reason, equity does not relieve the party who executed it upon or for such immoral and illegal consideration and purpose."

Perceiving no error in the ruling below, the decree will have to be affirmed.

A motion was made to dismiss this appeal on the ground that it should have been taken to the Appellate Court, instead of to this court. Under the act of 1877, the motion would have prevailed. *Young* v. *Stearns,* 91 Ill. 221 ; *Fleischman* v. *Walker et al.* id. 318 ; *Williams et al.* v. *Ayers et al.* 92 id. 16. But, under the Amendatory Practice act of 1879, (Laws of 1879, p. 222, § 88,) appeals and writs of error lie in chancery cases precisely as in cases at law, so that now in chancery cases in which a franchise or freehold, etc., is

involved the appeal or writ of error brings the case direct from the circuit court to this court.

*Judgment affirmed.*

DICKEY, Ch. J., and SCOTT, J.: We can not concur in the view taken of this case in this decision.