BENEDICT *v.* ROOME.

1. MORTGAGE—DURESS—HUSBAND AND WIFE—THREAT OF CRIMINAL PROSECUTION.

> A mortgage executed by a wife under an implied threat of a criminal prosecution against her husband is obtained by duress and undue influence equally as if given under an express threat of prosecution.

2. SAME

> Complainant's husband embezzled certain funds of defendants while in their employ. His conduct was disclosed to complainant by defendants' attorney, who also advised her that it constituted a criminal offense; and on the afternoon of the same day she was informed by one of the defendants that he must have security or the money, or "there are the papers," and "I shall go on with the proceedings." Complainant thereupon executed a mortgage to defendants upon her individual property for the amount of her husband's defalcation. *Held,* that a decree setting aside the mortgage as having been procured by duress and undue influence was authorized.

Appeal from Ionia; Davis, J. Submitted June 11, 1895. Decided September 26, 1895.

Bill by Sarah J. Benedict against William P. Roome and others to set aside a mortgage on the ground that it was executed under duress. From a decree for complainant, defendants appeal. Affirmed.

*R. A. Hawley,* for complainant:

· The mortgage in question was obtained by duress, or by undue influence, amounting to the same thing in law. *Buck* v. *Bank,* 27 Mich. 293; *Snyder* v. *Willey,* 33 Mich. 483; *Meech* v. *Lee,* 82 Mich. 274; *Cribbs* v. *Sowle,* 87 Mich. 340; *Miller* v. *Lumber Co.,* 98 Mich. 163; *McCormick Harvesting Machine Co.* v. *Hamilton,* 73 Wis. 486; *Bank* v. *Kusworm,* 88 Wis. 188; *Harris* v. *Carmody,* 131 Mass. 51; *Morse* v. *Woodworth,* 155 Mass. 233; *Foley* v. *Greene,* 14 R. I. 618; *Bayley* v. *Williams,* 4 Giff. 638; *Coffman* v. *Bank,* 5 Lea, 232; *Express Co.* v. *Duffey,* 48 Ga. 358; *Bank* v. *Kirk,* 90

Pa. St. 49; *Town of Sharon* v. *Gager*, 46 Conn. 189; *Mc-Mahon* v. *Smith*, 47 Conn. 221; *Adams* v. *Bank*, 116 N. Y. 606; *Beindorff* v. *Kaufman*, 41 Neb. 824.

*Lemuel Clute* and *Miller & Clute*, for defendants:

Counsel cited, to the contrary of the above proposition: 1 Bish. Cr. Law, § 714; *Lefebvre* v. *Dutruit*, 51 Wis. 326; *Hackley* v. *Headley*, 45 Mich. 574; *Prichard* v. *Sharp*, 51 Mich. 432; *Wolf* v. *Troxell Estate*, 94 Mich. 573; *Miller* v. *Lumber Co.*, 98 Mich. 163; *Mundy* v. *Whittemore*, 15 Neb. 647; *Horton* v. *Bloedorn*, 37 Neb. 666; *Stono* v. *Weiller*, 10 N. Y. Supp. 828; *Sprague* v. *Hosmer*, 82 N. Y. 470; *Metropolitan Life Ins. Co.* v. *Meeker*, 85 N. Y. 615; *King* v. *Williams*, 65 Iowa, 167; *Gregor* v. *Hyde*, 62 Fed. Rep. 107.

GRANT, J.  Complainant's husband had been, for some years prior to the date of the mortgage involved in this case, a traveling salesman for the defendants, a copartnership of New York City, under the firm name of William P. Roome & Co.  He collected moneys, amounting in all to about $800, belonging to his employers, and appropriated the same to his own use.  Under his own admissions, he was guilty of the crime of embezzlement.  His wife, the complainant, knew nothing of this state of affairs until about the time of the giving of the mortgage.  He had no property. She owned a house and lot in the city of Ionia, which was deeded to her by her parents, in consideration of which she agreed to support them during their lives. Her father was dead, her mother living.  Being unable to secure the payment of the money from Mr. Benedict, the defendants placed the claim in the hands of their attorneys for collection.  One of the attorneys went to her house, a day or two before the mortgage was given, to see her in regard to the matter.  Mr. Benedict came in before the attorney had disclosed his business, and nothing further was said.  June 19, 1893, one of the attorneys wrote a letter to complainant, requesting her to call at their office as soon as convenient, and he would finish the

explanation he commenced with her at her house. She did not go, but, on the morning of June 21st, she met the attorney in a store, who asked her to go to his office. On the way he told her that her husband was guilty of embezzlement, and that it was a criminal offense. In the office he explained the matter further, and read to her letters from Mr. Benedict to the firm, acknowledging his use of the money. The attorney told her that he thought that perhaps she might be able to assist Mr. Benedict. She told him that she had nothing except her home, and that she felt she had no right to use that until her mother's death. She declined to give the mortgage. Defendant Weir arrived at Ionia about 3 o'clock p. m. of the same day. He sent a letter to complainant, requesting her to meet him at the office of his attorneys. She went, and Mr. Weir then informed her that he must have security or the money. She said she would go home and talk with her mother, and return the next morning. He replied that he must leave that evening, and must know by 6 o'clock. He said: "I must have the money or the security, or there are the papers on the table, and I shall go on with the proceedings." She went away, and returned in about an hour, and gave a mortgage upon her homestead to secure the amount of her husband's embezzlement. She now asks to have this mortgage set aside on the ground of its procurement by duress and undue influence, and that it was given for the purpose of compounding a felony. Proofs were taken in open court, and decree entered for complainant.

We think the decree correct. It is unnecessary to detail the evidence at length. Mr. Weir and his attorney studiously sought to avoid any such threats as would vitiate the security they might take. If the court were to be governed alone by the words used to her by them, the position of the defendants might be sustained; but we cannot ignore the conclusion that the conduct of her husband was suddenly disclosed to her, that she understood that he had committed a crime, and that the papers

referred to by Mr. Weir as lying upon the table were prepared as the basis of a criminal prosecution. We think it clear that she gave the mortgage under an implied threat of criminal prosecution. If they so meant it, and she so understood it, and for that reason gave the mortgage, it was obtained by duress and undue influence, just as certainly as though an express threat had been made. The learned circuit judge saw the witnesses, and was therefore better able to judge their truthfulness and to reach a correct conclusion. We see no occasion to reverse the decree. The case comes within the rule established in the following cases: *Meech* v. *Lee*, 82 Mich. 274; *Miller* v. *Lumber Co.*, 98 Mich. 163; *McCormick Harvesting Machine Co.* v. *Hamilton*, 73 Wis. 486.

Decree affirmed, with costs.

The other Justices concurred.