HENSINGER et al., Appellants, v. DYER et al.

Division Two, December .20, 1898.

1. **Duress:** SIGNING NOTE. Where one charges another with having embezzled his money, and by threats of prosecution and imprisonment so overcomes his will as to induce him, for a just debt, to sign a note and deed of trust, which he would not have voluntarily signed, the contracts were obtained by duress, and are invalid. Nor is it material in such case that the person charged with the crime was or was not guilty. (Overruling Davis v. Luster, 64 Mo. 43.)

2. ————: ————: THREATS AGAINST HUSBAND : DURESS OF WIFE. And where a wife, because of threats to prosecute and imprison her husband, on a charge of embezzlement, is induced against her will to sign a note and deed of trust covering her own land, it will be held that the contracts as to her are invalid. And the threats being for an unlawful purpose, it is wholly immaterial whether they were of lawful or unlawful imprisonment.

3. ——: ——: RATIFICATION. But if the maker of such note subsequently ratified the same, he can not plead duress as a defense to its payment. Eighteen months after the note and deed of trust in suit were executed, default was made in the payment of the interest on a prior deed of trust, made for another beneficiary, on the same land. The land being advertised for sale thereunder, one of the makers of the duress note (the husband) agreed with the payee that the payee would pay the interest due under the prior mortgage and the back taxes, and the payee took another of this maker's notes for the amount, paid the interest and taxes, and the sale was stopped. *Held*, that this was a recognition on the part of such maker of the validity of the duress note and deed of trust, and estopped him from denying their validity. *But* as the land covered by the deed of trust belonged to his wife, and she was no party to the agreement between her husband and the payee in regard to the payment of the taxes and interest, and he was not her agent in making that agreement, she is not estopped to plead the duress and deny the validity of the note and the deed of trust secured thereby.

*Appeal from Pettis Circuit Court.*—HON. GEORGE F. LONGAN, Judge.

AFFIRMED IN PART; REVERSED IN PART (*with directions*).

JOHN CASHMAN and G. W. BARNETT for appellants.

(1) Under the rule announced and adopted by this court in Bell v. Campbell, 123 Mo. 1, the threats of Dyer to prosecute plaintiffs constituted duress. The rule adopted in that case is contained in these words: "The circumstances of this case clearly bring it within the operation of the principle that condemns and avoids a contract entered into where the obligor is not a free agent; where he stands *in vinculis;* where he is not equal to the task of protecting himself; where the circumstances which surround him at the time are of such extreme necessity or of distress that his will is overcome, his free agency destroyed by some oppression or fraudulent advantage or imposition incident to the transaction;

Hensinger v. Dyer.

in such case a court of equity will protect him by setting aside the contract thus made." Fout v. Geraldine, 64 Mo. App. 165; Turley v. Edwards, 18 Mo. App. 676; Town of Sharon v. Gayer, 46 Conn. 189; Foley v. Green, 14 R. I. 618; Jordan v. Elliott, 15 Cent. L. J. 232; Meech v. Lee, 46 N. W. Rep. 383; Moore v. Woodworth, 155 Mass. 233; Bryant v. Peck and Whipple Co., 154 Mass. 460; Taylor v. Jaques, 106 Mass. 291; James v. Roberts, 18 Ohio 548; Reynolds v. Copeland, 71 Ind. 422; Snyder v. Willey, 33 Mich. 483; Buck v. Bank, 27 Mich. 293; Beindorff v. Kaufman, 41 Neb. 824; Hullhorst v. Scharner, 15 Neb. 57; McCormick H. M. Co. v. Hamilton, 73 Wis. 486; Bennett v. Healey, 6 Minn. 158; Love v. State, 3 S. E. Rep. 893; Springfield Fire & M. Co. v. Hull, 25 L. R. A. 37; Ins. Co. v. Kirkpatrick, 20 So. Rep. 651.    (2)    A wife may avoid a contract induced and obtained by threats of imprisonment of her husband and it is immaterial whether the threat is of lawful or unlawful imprisonment, and where a wife is induced by a threat of her husband's arrest, to pay a debt due from him, to defendant, or to give security for the husband's debt, she may have the contract recinded in equity.    Adams v. Bank, 116 N. Y. 606; Eadie v. Slimon, 26 N. Y. 9; Harris v. Carmody, 131 Mass. 51; Koehler v. Wilson, 40 Iowa, 183; Benedict v. Roome, 106 Mich. 378; Heaton v. Bank, 47 Pac. Rep. 576; Hargreaves v. Korcek, 62 N. W. Rep. 1086; Giddings v. Bank, 74 N. W. Rep. 21. (3)    There can be no ratification by payment of interest or part of the debt.    McCormick Harv. M. Co. v. Miller, 74 N.W. Rep. 1061; Bell v. Campbell, 123 Mo. 1; Buck v. Bank, 27 Mich. 293; Beindorff v. Kaufman, 41 Neb. 824. (4)    An agreement, either expressed or implied, to abstain from a prosecution, or to dismiss a prosecution already begun, taints the whole transaction and avoids the contract. "You shall not stipulate for iniquity."    Brick Co. v. Cook, 44 Mo. 29; Sumner v. Summers, 54 Mo. 340; Taylor v.

Jaques, 106 Mass. 291; McCormick Harv. M. Co. v. Miller, 74 N. W. Rep. 1061. (5) Dyer having threatened to prosecute, and after having obtained the security, then abandoned his purpose to prosecute; he is presumed to have used the threat for the sole purpose of obtaining the deed, and not with a view of aiding in the administration of public justice. Snyder v. Willey, 33 Mich. 483; Buck v. Bank, 27 Mich. 293; Ins. Co. v. Hull, 25 L. R. A. 37; Heaton v. Bank, 47 Pac. Rep. 576; Morse v. Woodworth, 155 Mass. 233; Bryant v. Peck & Whipple Co., 154 Mass. 460; Town of Sharon v. Gager, 46 Conn. 189.

SANGREE & LAMM for respondents.

(1) The *prima facie* case made by the acknowledgment in favor of the voluntary and valid execution of the deed in question, can only be overthrown by clear proof and unequivocal and cogent testimony. Barnett v. Davis, 104 Mo. 549; Clark v. Edwards, 75 Mo. 87; Rust v. Goff, 94 Mo. 511; Mather v. Jarel, 33 Fed. Rep. 366; Biggers v. Building Co., 9 Mo. App. 210; Bohan v. Casey, 5 Mo. App. 101; Ins. Co. v. Nelson, 103 U. S. 548; Young v. Duval, 109 U. S. 573. (2) In order to divest an estate already vested by deed, the evidence ought to be so clear, strong and unequivocal, as to leave no room for a reasonable doubt in the mind of the chancellor. Atkinson v. Henry, 80 Mo. 157, Jackson v. Wood, 88 Mo. 76; Forrester v. Scoville, 51 Mo. 268; Johnson v. Quarles, 46 Mo. 423; Dallam v. Renshaw, 26 Mo. 533; Davis v. Fox, 59 Mo. 125. (3) This is not a case whose salient characteristics are ignorance, illiterateness, old age, or mental decrepitude or confidential relations; nor is it a case of no consideration passing to the grantors in the deed and payors of the note; nor is it a case of undue importunity, suddenness and .surprise , and no chance to consult counsel such as Bell v. Campbell, 123 Mo. 1, and Turley v. Edwards, 18 Mo. App. 676. Nor is it a

case where the debts secured were the antecedent debts of an insolvent husband, as in Sharpe v. McPike, 62 Mo. 300. (4) Actual, illegal intimidation must be clearly shown, and it must be of such sort as to control and master the will power of the grantors. Threats of legal proceedings are not "duress." Claflin v. McDonough, 33 Mo. 412; Davis v. Luster, 64 Mo. 43; Wilkerson v. Hood, 65 Mo. App. 491; Buchanan v. Sahlien, 9 Mo. App. 552; Dausch v. Crane, 109 Mo. 323; Holmes v. Hill, 19 Mo. 159; Wolfe v. Marshall, 52 Mo. 171; Miller v. Miller, 68 Pa. St. 486; Emmons v. Scudder, 115 Mass. 367; Hockly v. Headly, 45 Mich. 569. (5) Appellants' long acquiescence in the contract, the failure to complain, the turning over of collateral to secure back interest in February, 1895, eighteen months after the alleged duress, the friendly feeling and relations after the pretended imposition and intimidation, weigh heavily against their present contention. Murdock v. Lewis, 26 Mo. App. 234.

BURGESS, J.—This is a suit in equity by plaintiffs who are husband and wife against Dyer as beneficiary, and Porter as trustee, in a deed of trust executed by plaintiffs, to enjoin a sale thereunder then about to be made, and to have declared void and of no effect the note whose payment is secured by the deed of trust upon the land of the plaintiff Sarah Hensinger and described therein, upon the ground that their execution and delivery to Dyer were obtained by duress.

A temporary injunction was granted, and after answer filed by defendants, a motion was filed by them to dissolve the injunction, which motion and the case upon its merits were heard together, whereupon the temporary injunction was dissolved, the bill dismissed, and judgment rendered in favor of defendants for costs.

Plaintiffs appeal.

The note calls for $1,399, is dated August 15, 1893, due six months after date, and bears interest at the rate of six

per cent per annum. It was credited by $199, on the day of its execution.

The deed of trust to secure the payment of the note was executed on the twenty-third day of August, 1893, and filed for record in the recorder's office of Pettis county, where the land lies, the next day thereafter.

The defendant, Porter, was at the time the land was advertised for sale under the deed of trust, the acting sheriff of Pettis county, and as such had advertised to sell it on the twentieth day of July, 1895. The tract contains about seventy-two acres and belongs to the plaintiff Sarah Hensinger.

In 1886, plaintiffs rented from defendant Dyer a farm located in Pettis county, which they occupied as his tenants for about seven years, executing each year their note for the rent.

Most of these notes were secured by chattel mortgages on stock and crops raised on the farm; and the note in question was given in settlement of all claims between the plaintiffs and Dyer. M. H. Hensinger was authorized by Dyer to sell the property conveyed by these mortgages which he frequently did, paying the money received from such sales to Dyer. The deed of trust involved in this litigation was subject to a prior deed of trust on the same land for the sum of $1,100 in favor of one Inhauser.

Before the execution of the deed of trust in question, plaintiffs' lease was terminated, and they had moved from defendant's farm. During the last year that they occupied it they raised some five hundred bushels of corn on it, upon which Dyer claimed to have a lien under the statute.

The corn was sold by Hensinger and the proceeds applied to his own use, but he claims that he paid Dyer the value of the corn from the proceeds of the sale of other property upon which he had no lien.

Dyer threatened to institute criminal proceedings against Hensinger for embezzling the corn, if he and his wife did not execute to him their note for its value, secured by deed of trust upon the land of Mrs. Hensinger, and they testified that because of this threat, and in fear of such prosecution, they did execute the note and deed of trust in question. At the time of their execution, however, there was a settlement between plaintiffs and Dyer of their unsettled business transactions, and it was found that plaintiffs were indebted to Dyer in the sum of $1,399, for which they executed their note. Thereafter, upon a compromise of some of their business matters which were not included in the settlement, Dyer credited plaintiffs with $199 on said note as of the day upon which it bears date.

Shortly before the papers were executed Dyer went to plaintiffs' residence some seven miles from Sedalia, taking with him J. M. Byler, a notary public, to take the acknowledgment of the deed of trust in the event that he succeeded in getting plaintiffs to execute one, and this was one of the occasions upon which Dyer threatened to prosecute M. H. Hensinger, if the note and deed of trust were not executed.

Mrs. Hensinger had refused all the time, and still refused to execute the deed, but on the afternoon of that day plaintiffs went to Sedalia, consulted with their son, and with their attorney, and thereafter went to J. M. Byler's office and there executed the papers. The acknowledgment was taken by Byler as notary.

The deed of trust provides that in case of default in the payment of the interest on the first mortgage debt, or in the payment of the Dyer note or interest thereon, or any part thereof, the land might be sold at the pleasure of Dyer after being advertised according to the provisions of the deed of trust, and default having been once before made in the payment of interest, the property was advertised for sale under the deed of trust on February 19, 1895.

VOL. 147 mo—15

In the meantime an adjustment was made between plaintiffs and Dyer, and it was agreed that Dyer was to accept a note for $140, signed by plaintiffs' son-in-law Williams, and one Stephens, payable to M. H. Hensinger and indorsed by him, pay the back taxes on the Hensinger land, the interest due Inhauser amounting to $89.52, pay also the cost of the advertisement of the pending sale, and the balance of the Stephen's note, he, Dyer, was to apply on the defaulted interest on the note in question, and wait on all the balance of the defaulted interest until June 1, 1895, and when that time elapsed, the back interest was to be paid by plaintiffs, or the deed of trust in question was to be foreclosed.

Dyer made these payments according to the terms of his agreement, but default having thereafter again been made in the payment of interest on the first deed of trust, and in the payment of the principal and interest of the deed of trust held by him, he caused the property to be advertised for sale thereunder, at the courthouse door in the city of Sedalia, Pettis county, Missouri, on Monday July 29, 1895.

Duress may be said to exist when one person is, by threats of a criminal prosecution of such a character as to deprive him of his own free will and agency, induced to make a contract or perform some act that he would not otherwise make or perform. And if Dyer reasonably believed that M. H. Hensinger had committed the crime of embezzlement, and by threats of prosecution and imprisonment for the crime, overcame the will of plaintiffs and induced them to execute the note and deed of trust, and they would not have executed them voluntarily, then they were obtained by duress.

In Bell v. Campbell, 123 Mo. 1, there is quoted with approval the following from Earle v. Norfolk, etc., 36 N. J. Eq. 132: "Whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his will, and what he would not have done if left to

himself, is undue influence, whether the control be exercised by physical force, threats, importunity, or any other species of mental or physical coercion."

Now the testimony shows that the defendant M. H. Hensinger had sold a sufficient amount of Dyer's corn without his consent to constitute a felony, the punishment for which is imprisonment in the penitentiary, and that Dyer threatened him in no unequivocal terms that, if he and his wife did not execute to him their note for the value of the corn, and secure the same by deed of trust upon the wife's land, he would at once prosecute him criminally for the offense and send him to the penitentiary, and that laboring under the fear of such a prosecution they executed both the note and deed of trust.

In Davis v. Luster, 64 Mo. 43, it was held that in order to constitute duress because of threatened criminal prosecution it must be unlawful, that is, for an alleged crime of which the person charged is not guilty, but that case is in conflict with Sumner v. Summers, 54 Mo. 340, which is supported by the great weight of authority, as well as by reason, and is overruled. If a contract obtained by threats of a prosecution for a criminal offense of which the party charged is not guilty is invalid, it is difficult to see why a contract obtained by threats of a similar prosecution for an offense of which the person charged is guilty is not also invalid. One is just as wrongful as the other.

In Morse v. Woodworth, 155 Mass. 251, it was said: "It has sometimes been held that threats of imprisonment, to constitute duress must be of unlawful imprisonment. But the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities

and the public, but unlawful as against the threatener, when considered in reference to his effort to use for his private benefit processes provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts, without reference to the influences which moved them. In such a case, there is no reason why one should be bound by a contract obtained by force, which in reality is not his, but another's." See, also, Richardson v. Duncan, 3 N. H. 508; Foshay v. Ferguson, 5 Hill (N. Y.), 154; U. S. v. Huckabee, 16 Wall. 414; Miller v. Miller, 68 Pa. St. 486; Walbridge v. Arnold, 21 Conn. 424; Wood v. Graves, 144 Mass. 365, and authorities cited.

It logically follows from what has been said that both the note and deed of trust having been obtained by duress are void as to M. H. Hensinger, unless by some act of his since their execution he is estopped from denying their validity, and invalid as to Mrs. Hensinger if the threatened criminal prosecution of her husband is available to her and sufficient to justify her in the prosecution and maintenance of this action.

Some eighteen months after the note and deed of trust in question were executed, default was made in the payment of the interest on the prior deed of trust, and the land was advertised for sale in accordance with its provisions, and by an agreement between M. H. Hensinger and Dyer, the latter paid the interest thus due on said debt, and back taxes on the land amounting altogether to the sum of $140, for which Dyer took Hensinger's note, signed by one Williams and one Stephens as sureties, and the sale was stopped.

This was a recognition on the part of M. H. Hensinger of the vadidity of the note and deed of trust in question, and having induced Dyer to rely thereon and to pay the interest due on the prior deed of trust and also the taxes on the land, he should not now be permitted to deny the validity of the note and deed of trust to Dyer.

But no such state of facts exist with respect to Mrs. Hensinger. She was no party to this arrangement nor does the evidence show that her husband was her agent with respect to any act of his by which she is estopped to deny the validity of the note and deed of trust in favor of Dyer.

The question then arises, do the threats by Dyer to Mrs. Hensinger of a criminal prosecution against her husband invalidate the note and deed of trust as to her?

In Benedict v. Roome, 106 Mich. 378, plaintiff's husband embezzled funds of the defendants while in their employ. She was informed of the fact by defendants' attorney who advised her that it constituted a criminal offense; and on the afternoon of the same day she was informed by one of the defendants that he must have security or the money, or "there are the papers" and "I shall go on with the proceeding." She thereupon executed a mortgage to defendants upon her individual property for the amount of her husband's defalcation, and a decree of the trial court setting aside the mortgage as having been procured by duress and undue influence was sustained.

In Giddings v. Bank, 74 N. W. Rep. 21, it was held that where the fears or affections of a wife are worked on through threats made against her husband, and she is induced thereby, against her will, to convey her property to secure his debt, there is duress as to her, even though the debt be invalid, and the threat of lawful prosecution for a crime that had been committed by the husband.

So in Adams v. Bank, 116 N. Y. 606, it is held that a wife may avoid a contract induced and obtained by threats

of imprisonment of her husband and it is immaterial whether the threat is of lawful or unlawful imprisonment. To the same effect is Eadie v. Slimmon, 26 N. Y. 9.

It was also held in Koehler v. Wilson, 40 Iowa, 183, that a wife may plead the duress of her husband in an action to recover her property wrongfully obtained from him.

The same question received consideration in the case of Heaton v. Bank, 47 Pac. Rep. 576, and it was held that the execution by the wife of a deed of conveyance of the family homestead, which was obtained by threats of the arrest and imprisonment of her husband, was invalid and the deed was void, on the ground of undue influence in obtaining it, even though the threatened arrest and imprisonment were for an offense of which the husband was guilty. That the unlawful use of criminal process, or threatened unlawful use of criminal process, is itself unlawful, and no advantage obtained by such unlawful means should be sustained by the courts.

So in Hargreaves v. Korcek, 62 N. W. Rep. 1086, the supreme court of Nebraska held, where the husband and wife were induced to execute and deliver a mortgage upon their homestead to secure the payment of a judgment against him, which they would not otherwise have done, by threats of prosecution and immediate imprisonment of the husband, that these were sufficient to constitute duress and to render invalid the deed thus obtained.

It thus seems clear both upon principal and authority that a wife may avoid a contract which she has been induced to enter into by threats of a criminal prosecution of her husband.

If then as we hold, the note and deed of trust in question were obtained from Mrs. Hensinger, by reason of duress for fear of a threatened criminal prosecution and imprisonment of her husband, they are void as to her, and it is wholly immaterial whether the threats were of lawful or unlawful imprisonment.

While the threatened criminal prosecution of Hensinger may have been for a just cause and under lawful authority, it was for an unlawful purpose, that is, to compel the plaintiffs to execute the note in question, and Mrs. Hensinger to execute the deed of trust upon her land to secure its payment.

For these reasons we affirm the judgment as to M. H. Hensinger, and reverse it as to Mrs. Hensinger with directions to the court below to enter up judgment in her favor canceling the note and deed of trust, and making the injunction as to them perpetual.

GANTT, P. J., and SHERWOOD, J., concur.