B. H. BURTON AND MARY A. BURTON, HIS WIFE, APPEL-
LANTS, V. A. M. MCMILLAN, APPELLEE.

The maxim *in pari delicto, melior est conditio defendentis* does
not apply to a case where a married woman sues to set
aside a deed of her separate property, made by her under
express or implied threats of the prosecution of her hus-
band for the crime of embezzlement, and to save him
from such prosecution, whether the threatened prosecu-
tion was lawful or unlawful, particularly so when she
was sick and nervous, and when she does not appear to
have had abundant opportunity for consideration and
consultation with disinterested advisers.

This case was decided by Division B.

Appeal from the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the
court.

*Blount & Blount,* for Appellants;

*Maxwell & Reeves* and *Avery & Avery,* for Appellee.

HOCKER, J.: On the 8th of July, 1905, Beverly H. Burton
and Mary A. Burton his wife, filed a bill against A. M.
McMillan in the Circuit Court of Escambia county con-
taining, with an amendment thereto, the following allega-
tions:

"1. That the said Beverly H. Burton is and has been for
years the husband of Mary A. Burton, and that they and

the said A. M. McMillan are citizens and residents of Escambia county, Florida.

2. That prior to May 8, A. D. 1905, the said Mary A. Burton was the owner in fee simple of the real estate in the city of Pensacola described in Exhibit 'A' hereto attached and prayed to be made a part hereof, and that on said May 8th, she and the said Beverly H. Burton and their family of children were occupying the same as a homestead.

3. That also, at the said time the said Beverly H. Burton was the owner of certain furniture and other personal property which then was, and still is, in the house described in Exhibit 'A,' which personal property is fully set forth and described in Exhibit 'B,' hereto attached and made a part hereof. The said Exhibit 'B' also describes certain personal property belonging to May Burton, the daughter of the complainants herein, but the property so belonging to her is distinguished in said exhibit from the property belonging to the complainant Beverly H. Burton by having the description therein underscored.

4. That for many years prior to said May 8, A. D. 1905, the said Beverly H. Burton was the Deputy Clerk of the Circuit Court of Escambia county, Florida, having been appointed to such position by the defendant A. M. McMillan; that in the course of the conduct of said business, it became the duty of the said complainant to handle vouchers drawn upon the public funds of said Escambia county, and just prior to said May 8th, the said A. M. McMillan arrived at the conclusion that certain of the moneys belonging to said county had been embezzled, or made away with, or wrongfully obtained by some person in the office of the said A. M. McMillan, Clerk of the said Circuit Court, and the said defendant accused the said

complainant of being such person committing said wrong.

5. That the said complainant was naturally much disturbed by the making of said charge, and by the stigma that would be cast upon himself and his family if a criminal prosecution should be instituted upon the idea that he was the person guilty of the embezzlement or diversion aforesaid, and was desirous of avoiding the said prosecution. The said defendant was also desirous of raising money with which to pay the amount of the deficit in the said funds, and the said McMillan stating to the said complainant, Beverly H. Burton, that he and the State Auditor had been schoolmates, promised the said complainant that if he would cause his wife to deed to him the real estate hereinbefore mentioned, and would himself convey to him the personal property hereinbefore mentioned, and would procure his daughter May Burton to also convey the person property described in Exhibit 'B' belonging to her, he, the said McMillan, would so arrange that no criminal prosecution should be instituted against the said complainant, and contracted with the complainant that no such prosecution should occur.

6. That relying upon the said promise of the said defendant, and solely upon the consideration thereof, the said complainant procured that his said wife should be willing to make a conveyance of the said property, and that his said daughter should be willing to make a bill of sale of her said property, and thereupon the complainants executed and delivered in pursuance of the said agreement between the defendant and the said Beverly H. Buront, complainant, a deed to the said property, a copy of which deed is fully and accurately set forth in Exhibit 'A' heretofore mentioned, and that the said complainant and his said wife, and his said daughter also, upon the

said consideration, and relying upon the said contract, executed and delivered to the said defendant the bill of sale for the property mentioned therein, a copy of said bill of sale being Exhibit 'B' hereto attached. And that immediately upon the execution and delivery of the said instruments to the defendant, he caused the same to be recorded in the proper books of record in Escambia county.

7. That in violation of the said contract and of his said promise, after the defendant had received the said deed and the said bill of sale, he did not procure that there should be no criminal prosecution against the said complainant, Beverly H. Burton, for the said alleged crime, but upon the contrary, he, the said defendant, has himself instituted a prosecution before J. R. Landrum, Justice of the Peace of the Second District of Escambia county, Florida, for the said crime, and has caused the said complainant to be arrested and brought before the said Justice of the Peace, and to furnish bond for his appearance for trial upon said charge before the Criminal Court of Record of the said Escambia County.

8. That the real property hereinbefore mentioned was the homestead of the said Beverly H. Burton and his said wife and family, and not subject to exemption (?) against the complainant Beverly H. Burton, and that the said complainant was not possessed of more than a thousand dollars of personal property in the State of Florida, and therefore that the said personal property conveyed by him as aforesaid to defendant, was exempt from execution against him, the complainant alleging that it was of a value much less than one thousand dollars.

9. That complainants are advised and believe, and therefore aver that since the sole consideration upon which the said conveyance and the said bill of sale were executed

was the consideration aforesaid, and since the said consideration has failed, that they are entitled to have the said conveyance and the said bill of sale cancelled and annulled, and have a re-conveyance of the said property by the said defendant.

10. That the complainant, Mary A. Burton, only became aware of the charges made by the defendant that her said said husband had embezzled the funds of the said county, on the day before the making of the conveyance and the bill of sale aforesaid, by the statement of her husband that such charge had been made, and upon the same day, the defendant came to the house of complainants and remained for a very long time, persuading and influencing him and her to make the said conveyance and bill of sale, promising, as aforesaid, that if they should be made, he would see that no prosecution would be brought against the complainant Beverly H. Burton; that the said complainant was loth to make the said instruments, because the effect of transferring the property therein mentioned to the defendant would be to leave her and her children (of which she has and then had four) without a home or furniture, and penniless, but she has been sick with a nervous disease for many years, and her nerves were so affected, and her mind so weakened by the shock of the communication to her, and the threatened exposure of her said husband and the consequent imprisonment of him in the penitentiary, that she yielded and consented to execute the said instruments, and did so. That the time elapsing between her first knowledge of the charge against her said husband, and the execution of the said papers, was only the time between the late morning of a Sunday and the early morning of the next day, and that during this time, the defendant had two interviews with her and pre-

vailed upon her to execute the said papers, and that, finally, when she did so, she was so weak and unstrung that she was compelled to get up from a sick bed to execute them, and that but for her said nervous and shocked condition and the influence of the defendant and his promise aforesaid, she would not have executed the same. And that complainants are advised, believe and aver that the said execution, made under the circumstances aforesaid, was under duress, not binding upon the complainants, and should be set aside by a court of equity.

To the end, therefore, that the defendant may, to the best and utmost of his remembrance, knowledge, information and belief, but not under oath, his oath being hereby expressly waived, full, true and perfect answer make to the premises, and that this Honorable Court may decree that the said conveyance and the said bill of sale to the defendant may be canceled and annulled, and that the said defendant shall re-convey the same to the complainants.

And that the complainants shall have such other and further relief as in the premises unto this court shall seem meet and fit.

Complainants pray process of subpoena according to law and the usual course of this court, directed to the defendant, A. M. McMillan."

To the bill as amended the defendant demurred, on the grounds:

"1st. That it does not appear from the allegations of the bill of complaint that the complainants are entitled to any discovery from, or relief against, the defendant; and,

2nd. That the said bill of complaint is multifarious."

On the 13th of February, 1906, the Circuit Judge sus-

tained this demurrer generally, and gave leave to the complainants to amend their bill if they be so advised, on or before the rule day in March, 1906. The complainants failing to amend their bill, on application of the respondent, the Circuit Judge, on the 12th of March, 1906, made a decree dismissing the bill of complaint and the amended bill of complaint; that the complainants go hence without a day, and that the respondent recover his costs by execution. From this decree an appeal was taken to the June term of this court.

The appellants assign as errors that: 1st. The court erred in sustaining the demurrer to the amended bill.

2nd. That the court erred in dismissing the bill of complaint as amended.

3rd. That the court erred in rendering a final decree for the defendant.

4th. That the court erred in not dismissing the bill "without prejudice."

The briefs of the respective solicitors of the parties cover the whole range of the law pertinent to the facts of the case and very ably present their respective views of its proper application.

The positions taken by the appellee in support of the decree below are that the bill does not allege that any prosecution was threatened or that any violence or menace of any kind was offered to secure the execution of the instrument attacked; that the bill should have shown clearly that Burton was threatened with unlawful imprisonment, for if he was threatened with lawful imprisonment and the acts of the complainant in procuring the deed amounted to the compounding of a felony, no relief could be granted the complainants under the application of the well known maxim *"in pari delicto, melior est con-*

*ditio defendentis."* Many authorities are cited in support of these contentions. Among them Landa v. Overt, 45 Texas 539; Shattuck v. Watson, 53 Ark. 147, 13 S. W. Rep. 516, 7 L. R. A. 551; Plant v. Gunn, 2 Wood's 372; Swartzer v. Gillett, 2 Pinney (Wis.) 238; Gregor v. Hyde, 62 Fed. Rep. 107; Moore v. Adams, 8 Ohio 373; Eddy v. Herrin, 17 Me. 338; Girty v. Standard Oil Co., 1 App. Div. (N. Y.) 224; Sanford v. Sornborger, 26 Neb. 295, 41 N. W Rep. 1102; Kirkpatrick v. Clark, 132 Ill. 342, 24 N. E. Rep. 71; Smith v. Rowley, 66 Barb. (N. Y.) 502; Weber v. Barrett, 125 N. Y. 18, 25 N. E. Rep. 1068; Knapp v. Hyde, 60 Barb. (N. Y.) 80; Catlin v. Henton, 9 Wis. 476; Columbia Lodge v. Manning, (N. J.) 38 Atl. Rep. 444; Rock v. Mathews, 35 West Va. 531, 14 S. E. Rep. 137, 14 L. R. A. 508; Allison v. Hess, 28 Iowa 388; Compton v. Bunker Hill Bank, 96 Ill. 301, S. C. 36 Am. Rep. 147. These cases sustain the general contention that in order to obtain relief against a contract made under threats of criminal prosecution it must be shown that the threats were of *unlawful* imprisonment, otherwise the maxim *in pari delicto* applies and the courts give no relief to either party. Granting that the bill as amended sufficiently alleges that a criminal prosecution was threatened none of these are based on facts exactly similar to the one at bar. In Smith v. Rowley, Weber v. Barrett, Girty v. Standard Oil Co., *supra,* efforts were made to relieve from the contracts of married women, and the maxim was applied; but in none of these were there allegations that the married women when the contracts were made were in other than normal health. Indeed, we have not been able to find any case where this maxim has been applied either to a woman or man under the conditions alleged in the 10th paragraph of the bill as amended. On the contrary another

question is presented and there is abundant authority
that regard should be had to the age, sex and condition
of the parties, and to the circumstances surrounding them
at the time of making the contract in order to determine
whether undue influence was exercised, whether the act
was voluntary or induced by duress, and if conditions ex-
isted showing that the parties were not dealing at arms'
length; that there was no equality of situation and the
judgment of one was overborne by sickness and apprehen-
sions of disaster and disgrace the maxim of *"in pari de-
licto"* does not apply. Under such circumstances the ques-
tion is simply one of undue influence. Particularly there
are many and very high authorities holding that the max-
im does not apply when the relation of father and son,
husband and wife, or other near relationship exists. Wil-
liams v. Bayley, decided by the House of Lords of Eng-
land in 1866, reported in Vol. 1 Law Reports, English and
Irish Appeal Cases, p. 200, is a leading case along this
line, and is frequently referred to in the American cases
sustaining similar view. In this case a son carried to
bankers of whom he, as well as his father was a customer,
certain promissory notes with his father's name upon
them as indorser. These indorsements were forgeries. On
one occasion the father's attention was called to the fact
that a promissory note of his son with his (the father's)
name on it was lying at the banker's dishonored.    He
seemed to have communicated the fact to the son, who im-
mediately redeemed it; but there was no direct evidence to
show hether the father did or did not really understand
the nature of the transaction. The fact of the forgery was
afterwards discovered; the son did not deny it; the bank-
ers insisted (though without any direct threat of a pros-
ecution) on a settlement to which the father was to be a

party; he consented, and executed an agreement to make an equitable mortgage of his property. The notes with the forged indorsements were then delivered up to him. "Held, that the agreement was invalid. A father appealed to under such circumstances, to take upon himself, a civil liability, with the knowledge that unless he does so his son will be exposed to a criminal prosecution, with a moral certainty of a conviction, even though that is not put forward by any party as a motive for the agreement, is not a free and voluntary agent and the agreement he makes under such circumstances is not enforceable in equity." The father in this case was relieved of his contract because when he made it he was under *pressure* of relieving his son from a criminal prosecution, and was not a free and voluntary agent.

In the case of Harris v. Carmody, 131 Mass. 51, it was held, "A father may avoid a mortgage which he has been induced to sign by threats of the prosecution and imprisonment of his son." In the opinion by Morton, J., it is said: "At common law, as a general rule, the defence of duress *per minas* must be sustained by proof of threats which create a reasonable fear of loss of life, or of great bodily harm or of imprisonment, of the person to whom the threats are made, and one man cannot avoid his obligation by reason of duress to another. There is a well-settled exception to this rule in the case of husband and wife, all the authorities agreeing that each may avoid a contract if it was made to relieve the other from duress. Shep. Touchst. 61. Met. Con. 28, and note, Robinson v. Gould, 11 Cuch. 55, and cases cited." The opinion proceeds to say the relation of parent and child is within the exception, quoting Bayly v. Clare, 2 Brownl. 275, 276; M. 7 Ja. B. per Coke, Id.; 1 Rol. Ab. 687, pls. 4-6; Bacon's Max. reg.

18 and other authorities. The opinion proceeds to say that "the exception in favor of husband and wife is not based solely on the fiction that they are in law one person, but rather upon the nearness and tenderness of the relation."

In the case of Morse v. Woodworth, 155 Mass. 233, 27 N. E. Rep. 1010; 29 N. E. Rep. 525, it is held that: "One who reasonably believes that another has committed a crime, and who by threats of prosecution and imprison-ment for the crime overcomes the will of the other and induces him to execute a contract which he would not have made voluntarily, cannot enforce the contract if the other attempts to avoid it on the ground of duress." The opinion is instructive. Among other things, it is said: "It has sometimes been held that threats of imprisonment, to constitute duress, must be of unlawful imprisonment. But the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful against the authorities and the public, but unlawful as against the threatener, when considered in reference to his effort to use for his private benefit processes provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts, without reference to the influences which moved them." The court admits

that there are decisions the other way, but holds that this view of the subject rests on sound principles, and is in conformity with the most recent decisions in such cases both in England and America.

In Mack v. Prang, 104 Wis. 1, 79 N. W. Rep. 770, it is held: "Threats to prosecute a man for embezzlement unless his wife executes a mortgage on her separate property to secure his debt constitutes duress and avoids her mortgage obtained thereby." See note to this case in 76 Am. St. Rep. 850, where other cases are cited to the same effect.

In Galusha v. Sherman, 105 Wis. 263, 81 N. W. Rep. 495, a suit in equity was brought to set aside a note and mortgage on the ground of duress. It was, among other things, held: "If in making a contract, one party to the transaction be incapable of exercising his free will by reason of threats made by the other for the purpose of producing such condition, to the end that he may obtain such contract, such party may, at his option, repudiate such contract on the ground of duress." "What constitutes duress is matter of law; whether duress existed in a particular transaction is matter of fact. There is no legal standard of resistance which a person acted upon must come up to at his peril of being remediless for a wrong done to him, and no general rule as to the sufficiency of facts to produce duress." The doctrine that in order to produce duress by threats there must be such threats as are reasonably necessary to control by fear the free will power of a person of ordinary firmness and courage is *not the true doctrine* or the law of this State."

In Benedict v. Roome, 106 Mich. 378, 64 N. W. Rep. 193, it is held: "A mortgage executed by a wife under an *implied* threat of a criminal prosecution against her husband is obtained by duress and undue influence equally, as if

given under an express threat of prosecution." This was a bill brought by a married woman to set aside a mortgage on the ground that it was executed under duress.

The case of Leflore County v. Allen went to the Supreme Court of Mississippi twice; reported in 78 Miss. 671, 29 South. Rep. 161, under the style of Allen v. Leflore County, and in 80 Miss. 298, 31 South. Rep. 815, under the title of Leflore County v. Allen. It is held in that case, "Where the wife of a defaulting County Treasurer is threatened by a District Attorney with the prosecution of her husband unless she conveys all of her property to the county, and refuses, but subsequently while her husband is still living and liable to prosecution conveys a part of her property on a renewal of the application, her deed is void as the result of duress." In the statement of the facts it is said: "It does not appear that the threats were repeated at the time she signed the deed last presented to her," but the court granted her relief.

The case of Gorringe v. Reed, 23 Utah 120, 63 Pac. Rep. 902, 90 Am. St. Rep. 692, is somewhat like the one at bar. A suit in equity was brought by a wife to set aside a deed made by her under threats of prosecution of her husband. It is held: "A wife may avoid a contract obtained by threats of imprisoning her husband, and it is of no consequence whether the threat is of lawful or unlawful imprisonment;" and further, "Equity may grant relief from unlawful transactions if public policy so requires when the parties, though *in delicto* are not *in pari delicto*." This case is instructive, and many authorities are quoted to sustain the law as stated; among them, 1 Story's Eq. Jur. Sec. 288, 300; Morse v. Woodworth, *supra*; Williams v. Bayley, *supra*; Benedict v. Roome, *supra*, and a great

31—S. C.

many others giving the modern law. See notes in the volume of Am. St. Rep. *supra.*

In Adams v. Irving Nat. Bank of New York, 116 N. Y. 606, 23 N. E. Rep. 7, S. C. 15 Am. St. Rep. 447, it is held: "In relation to husband and wife, parent and child, each may avoid a contract induced and obtained by threats of imprisonment of the other, and it is of no consequence whether the threat is of lawful or unlawful imprisonment. The principle which underlies all this class of cases is, that whenever a party is so situated as to exercise a controlling influence over the conduct and interest of another, contracts thus made will be set aside." Many authorities are cited to sustain these principles. To the same effect see Hensinger v. Dyer, 147 Mo. 219, 48 S. W. Rep. 912.

In Heaton.v. Norton County State Bank, 5 Kan. App. 498, 47 Pac. Rep. 576, it is held: "When the execution by the wife of a deed of conveyance of the family homestead is obtained by threats of the arrest of her husband, such deed will be held invalid and void on the ground of undue influence even though the threatened arrest and imprisonment is for an offense of which the husband is guilty. The unlawful use of criminal process, or the threatened unlawful use of criminal proceedings is itself unlawful, and no advantage will be sustained by the courts." To the same effect see Hargreaves v. Korcek, 44 Neb. 660, 62 N. W. Rep. 1086, where many authorities are cited, among them, Morse v. Woodworth, *supra;* Lumerson v. Johnson, 44 N. J. Eq. 93, Atl. Rep. 11; Coffman v. Lookout Bank, 5 Lea (Tenn.) 232; City National Bank of Dayton v. Kusworm, 88 Wis. 188, 59 N. W. Rep. 564, 26 L. R. A. 48, and notes; where numerous authorities are cited; Bell v. Campbell, 123 Mo. 1, 25 S. W. Rep. 359.

Bentley v. Robson, 117 Mich. 691, 76 N. W. Rep. 146, is a

case where a mortgage was given by an old woman seventy years of age who was told that she would have to sign the mortgage to save her son-in-law from jail, and the mortgage was held void for duress.

In Central Bank of Frederick v. Copeland, 18 Md. 305, S. C. 81 Am. Dec. 597, it was held: "Equity will not enforce a contract against one who although acting voluntarily, yet in fact appears to have executed the contract with a mind so subdued by harshness, cruelty or extreme distress, or apprehensions short of legal duress as to overpower and control the will."

In Foley v. Greene, 14 R. I. 618, S. C. 51 Am. Rep. 419, it was held: "A security executed by a mother to protect her son from exposure and prosecution for such embezzlement is invalid." In this case the mortgage was executed to one Hanley and assigned to Greene. The court in the opinion says: "It is true there was no direct threat by Hanley, but there was a pressure exerted, which had the effect, and was, doubtless, intended to have the effect of a threat." 1 Story's Eq. Jur. (13th ed.) Sec. 239; 2 Pom. Eq. Jur. (3rd ed.) Secs. 942, 951.

It is also contended for the appellee that a conveyance of land made in consideration of forbearing a prosecution is an executed contract, and will not be set aside by a court of equity. But the authorities cited to support this contention reach their conclusions under the theory that the maxim of *"in pari delicto"* applies, and it seems to us that in cases where the parties do not stand *"in pari delicto,"* as where one of the parties, under the duress of threats executes a deed of land to save one dear to him from exposure, disgrace and ruin, no such distinction is made. 6 Am. & Eng. Ency. Law (2d ed.) 416, 417; Heaton v. Norton County State Bank *supra*; Leflore

County v. Allen, *supra*.   See 1 Page on Contracts Sec. 266;
9 Cyc. pp. 443 to 456 inclusive.

No question is raised here that the bill was obnoxious
to demurrer because of any formal defect or technicality,
but it is insisted by counsel for appellee that the case was
squarely decided on its merits and not upon any technical-
ity, or even upon an inadvertent omission. .

We think the foregoing authorities sustain the proposi-
tion that the maxim *"in pari delicto"* should not be ap-
plied to a case where a married woman sues to set aside
a deed of her separate property made by her under ex-
press or implied threats of the prosecution of her husband,
and to save him from prosecution, whether the threatened
prosecution was lawful or unlawful, when she was sick
and nervous, and when she does not appear to have had
abundant opportunity for consideration and consultation
with disinterested advisers.

The bill as amended shows substantially that Mrs. Bur-
ton only became aware that her husband was charged with
embezzling the funds of the county on the day before the
deed was made; that the defendant came to her house
twice and persuaded and influenced her to make the deed;
that she was sick, her nerves affected, and her mind weak-
ened by the shock of the communication, and the threat-
ened exposure of her husband and his imprisonment in the
penitentiary; that the defendant promised if she would
make the deed he could and would arrange that no prose-
cution be brought against her husband; that she was
loth to make the deed as it would leave her and her four
children without a home and penniless; that she had only
from late Sunday morning to early Monday morning to
deliberate; that she had to get out of a sick bed to exe-
cute the deed, and that she would not have executed the

deed but for her nervous, unstrung and shocked condition, and the promise of the defendant.

It does not seem to us that Mrs. Burton was simply persuaded by the defendant to execute the deed and yielded to his persuasion. He presented to her the alternative, by the clearest implication, of her husband's prosecution for embezzlement, if she did not execute the deed, for unless she did so he would not be moved to prevent it. We think the allegations of the bill entitle Mrs. Burton to relief.

The decrees sustaining the demurrer to the bill as amended and dismissing it, are reversed at the cost of the appellee, and the cause remanded for further proceedings in conformity with law.

Taylor and Parkhill, JJ., concur;

Shackleford, C. J., Cockrell and Whitfield, JJ., concur in the opinion.